**LOCAL DIVISION 1098, AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL-CIO, Plaintiff,**

v.

**EASTERN GREYHOUND LINES, a Division of the Greyhound Corporation, Defendant.**

Civ. A. No. 2996-63.

United States District Court
District of Columbia.

Dec. 18, 1963.

Isaac N. Groner, Washington, D. C., for plaintiff.

Theodore Voorhees, Philadelphia, Pa., and Paul F. McArdle, Washington, D. C., for defendant.

HOLTZOFF, District Judge.

In the case of Local Division 1098, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL-CIO, against Eastern Greyhound Lines, the Court has before it a motion for a preliminary injunction. This motion was argued orally at great length yesterday. The Court

has read the affidavits submitted in behalf of the respective parties and has also examined overnight the memoranda of law submitted by the parties, and is now ready to announce its ruling.

The preliminary injunction sought in this case is an injunction to restrain the Eastern Greyhound Lines, the defendant, from moving its repair and maintenance operations from Washington, D. C., to Chicago, Illinois, until the completion of an arbitration proceeding between the parties determining whether under the collective bargaining agreement between them the defendant has a right to carry out its plan. The action is brought for a final judgment enjoining the proposed move until the completion of the arbitration proceeding.

The salient facts are brief and may be summarized as follows. The defendant, Eastern Greyhound Lines, operates a network of motor bus lines in various parts of the United States. It has maintained a garage or repair shop in Washington, D. C., where repairs and maintenance work on many of its buses have been conducted from day to day. On October 31, 1963, the defendant notified the plaintiff, which is a union representing certain employees of the defendant at Washington, D. C., that the defendant would transfer the repair and maintenance work from Washington, D. C., to its plant at Chicago, Illinois, as of January 6, 1964. The employees of the Washington plant were offered an opportunity to be transferred and given employment at the Chicago plant, with a seniority, however, as of November 6, 1963 and not the seniority which they were enjoying at the Washington plant.

■ Every employer, of course, has a right to designate the place where his employees shall perform their duties. That is part of the freedom of every employer. It is also a part of his freedom, however, to enter into a contract limiting that right. The union claims that such a contract existed.

It must be realized, of course, that transferring operations from one place to another is part of modern business life. Conditions frequently arise necessitating such transfers. That is true both of private industry and of the government. Examples of such moves can be cited without number. By way of illustration the Court might mention just a few. For example, some years ago a well-known law book publisher moved his plant from New York City to Colorado Springs, much to the heartache of many of the employees. During the war the Government moved the Patent Office from Washington, D. C. to Richmond, Virginia, and the Immigration and Naturalization Service from Washington to Philadelphia. It has frequently transferred various activities of the Veterans Administration or of the Defense Department from one place to another.

It must be borne in mind, however, that each of these transfers frequently involves a very serious matter for the employees concerned. The average person does not like to move from one place to another. Homes have to be sold and new homes purchased, sometimes with detrimental speed; children have to be transferred from one school to another; social ties have to be uprooted and new ones slowly formed. All these matters are human considerations that are of great weight to the persons concerned. Consequently, we are not dealing with any routine subject, but with something that is of considerable importance. On the other hand, it is natural for business and the Government to conduct its activities at places where this can be done with the highest degree of efficiency and with the least possible cost.

The plaintiff union claims that there are certain provisions in its agreement with the Eastern Greyhound Lines that preclude the move here proposed. The agreement also provides that in case of disputes either party may call for an arbitration of the controversy. Accordingly, in this case the union promptly demanded arbitration.

The arbitration provision of the contract, Article I, Section 2, paragraph (d), provides that in such a case the Arbitra-

tion Board shall consist of three persons, one to be chosen by the company, one by the Union, and a third arbitrator by the other two from a seven-man permanent panel. The two arbitrators were appointed and by mutual agreement a third man was selected from the seven-man panel. On December 9, however, that gentleman notified the parties that he could not reach the case until some time in February, because of prior commitments. It was, of course, important to have this arbitration concluded prior to January 6th. The arbitration would have involved merely a construction of the contract and would not have required the taking of voluminous testimony and, therefore, it would seem to the Court that a single session of the arbitrators should have been sufficient and a prompt decision might follow.

When the third arbitrator first selected indicated that he could not reach the case until February 1st, another arbitrator from the seven-man panel was chosen, but he likewise had prior commitments and was not in a position to hear the case until after the end of January. The defendant declined to agree on any other member of the seven-man panel and preferred to wait until the first arbitrator named would become disengaged. Counsel for the defendant gave plausible reasons for refusing to agree to any other member of the seven-man panel. The fact remains, however, that it was the attitude of the defendant in this respect, even though it may be a perfectly reasonable one, that has delayed the arbitration.

In the meantime the defendant is proceeding with its projected move and indicates that it will consummate it as of January 6, 1964, as heretofore announced, and will not wait for the result of the arbitration award. This suit was then brought to enjoin the defendant from taking steps to consummate the projected move until after the arbitration is completed and the arbitrators make their award. A motion for a preliminary injunction for the same relief is now before the Court.

The Court is not going to discuss the particular provisions on which the plaintiff relies as precluding the defendant from proceeding with the proposed move. That is a matter entirely for the decision of the arbitrators and any discussion by the Court of this question would not only be irrelevant but might perhaps prejudice or influence the arbitrators, which should not be done.

The Supreme Court, in the case of United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 568, 80 S. Ct. 1343, 1346, 4 L.Ed.2d 1403, said:

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious."

■ The Court on an application for a preliminary injunction must, of course, proceed in accordance with the basic principles of equity, and one of the basic principles of equity in connection with the granting or denying applications for preliminary injunctions is the matter of balance of convenience. The inconvenience that would be sustained by the defendant would be a few weeks' delay in making the move from Washington, where these operations have been conducted for years. Even these few weeks could have been avoided if the defendant were willing to agree upon some other member of the panel as the third arbitrator. On the other hand, the employees are confronted with the choice of either now accepting an opportunity to transfer to Chicago, or foregoing that opportunity permanently if the award of the arbitrator should go against them, and then their only recourse would be looking for other employment. To make the transfer requires some of them to sell their homes, to move their families, to incur considerable expense and obviously a great deal of inconvenience. The Court is of the opinion,

therefore, that the balance of convenience heavily weighs in favor of the plaintiff.

■ As the Court has indictated in connection with the defendant's motion to dismiss the complaint, the Court is of the opinion that the complaint states a cause of action. It has been held by the Supreme Court in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, that the courts may grant specific performance of a covenant in a contract between a labor union and an employer to arbitrate grievances. While here both sides are willing and are undertaking to arbitrate, the complaint here seeks to make this arbitration effective. If the Court has power to order specific performance of such a covenant, it has collateral power to take steps that would prevent rendering the result of the arbitration futile and ineffective. If this injunction is not granted and the defendant eventually loses the arbitration it would have to bring its operations back to Washington. In the meantime, a great deal of inconvenience and expense will have been incurred by the employees. In fact, the employer would be in a situation where it would have to unscramble an omelet. On the other hand, as heretofore stated, the only effect of the injunction so far as the defendant is concerned would be a few weeks' delay.

■ The question has arisen whether the Norris-LaGuardia Act bars the granting of such an injunction. It is an ironical thing in a way for an employer to object to the granting of an injunction at the behest of a labor union as being in contravention of the Norris-LaGuardia Act. The Norris-LaGuardia Act, as is well known, was passed to prevent injunctions being granted at the behest of employers against labor unions or employees generally. The Norris-LaGuardia Act, however, does not by express terms so specify and is not so limited and it has been applied in reverse. Consequently, the Court is confronted with the question whether the particular controversy before it is within the terms of the Norris-LaGuardia Act.

The first impression of the Court was that Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, was applicable. That Section, it will be recalled, prohibits the granting of an injunction in connection with a labor dispute unless the Court makes certain findings of fact. On further reflection and reading of the authorities, the Court has reached the conclusion that the Norris-LaGuardia Act does not apply at all to the controversy here involved.

In Textile Workers Union of America v. Lincoln Mills, to which reference has been made, the Supreme Court held that an arbitration clause in a collective bargaining contract may be enforced by an action in equity. The Court also expressly held that the Norris-LaGuardia Act does not apply to such a proceeding. As I have indicated, the action before the Court here is a form of an attempt to force specific performance of an arbitration clause because what it seeks to do is to protect and safeguard the situation in such a manner that the award, when and if made, will be effective and not futile. Consequently, the Court reaches the conclusion that the principle of the Textile Workers case is applicable to the controversy in the instant case and that therefore the Norris-LaGuardia Act does not apply.

Accordingly, the Court will issue a preliminary injunction restraining the defendant from taking any further steps in connection with an endeavor to consummate its projected move of the activities referred to in this action from Washington to Chicago, until after the arbitration is concluded.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.