**LOCAL UNION NO. 328, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,**

v.

**ARMOUR AND COMPANY, Defendant.**

**Civ. A. No. 1258.**

United States District Court
W. D. Michigan,
Northern Division.

Nov. 1, 1968.

Morse & Kleiner, by Edward M. Smith, Grand Rapids, Mich., and Goldberg, Previant & Uelmen, by John S. Williamson, Jr., Milwaukee, Wis., for plaintiff.

Foster, Campbell, Lindemer & McGurrin, by John L. Collins and David C. Coey, Lansing, Mich., for defendant.

### OPINION OF THE COURT

KENT, Chief Judge.

THE COURT: This is an action for injunctive relief instituted by the union representing certain of the employees of the defendant, Armour and Company, for the purpose of preventing the closing of the defendant's distribution plant in Marquette.

The plaintiff relies upon the collective bargaining agreement which was entered into in April, 1968, and which continues in effect for three years.

It appears that there are three of the defendant's employees who are members of the plaintiff union who would be affected by the closing of the Marquette distribution plant, which closing is scheduled for November 2, tomorrow, and which was announced to the employees affected by the closing on October 21, 1968, and to the union, itself, on October 17, 1968.

The plaintiff relies upon certain terms of the contract; specifically, Section 4 of Article II, relating to the jurisdictional rules, on the theory that closing of the Marquette distribution plant and utilizing common carriers to perform the work presently being performed from the Marquette distribution plant is a violation of Section 4 of Article II, which provides, in part:

"The Employer agrees" that it will not "permit their employees or persons other than the employees in the bargaining units here involved to perform work which is recognized as the work of the employees in said units."

The union also relies upon Article XXIV, which relates to the changing of operations which would affect the wages, hours and working conditions, or result in a reduction of employment opportunity for members of the union and which requires that the subject matter be discussed between the employer and the union prior to effectuating such a change.

It is claimed by the union that there was no such discussion.

The first and great hurdle is the Norris-LaGuardia Act, Title 29, U.S.C.A., Section 101, which, by its terms, states that:

"No court * * * shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute. * * *"

And Section 113 of Title 29 defines a labor dispute and when a case shall be deemed to grow out of a labor dispute.

The really amazing part of this whole case is that no one has been able to come up with any decision which is directly in point. And that is truly amazing, because it would appear to one who had been engaged in this kind of work to any extent at all that there should have been a similar situation presented to another court on an appellate level.

We are not satisfied that any case has been presented which fits into this picture.

There are a number of other cases: Allied Oil Workers Union v. Ethyl Corporation, 5 Cir., 341 F.2d 47, which was a suit for interpretation of a contract even though there was no compulsory arbitration provision, and in which action a declaratory judgment was sought. In our opinion, the case is not, in the general sense, applicable to the situation here.

There is a decision by the Ninth Circuit Court of Appeals, Retail Clerks Union Local 1222 v. Alfred M. Lewis, Inc., 327 F.2d 442; but that is not a suit for an injunction in the ordinary sense, although it does result in a mandatory injunction because it requires an employer to comply with the terms of a labor-management agreement.

At page 446, Judge Duniway, speaking for the Court, cites *Lincoln Mills* and points out that in that decision, 353 U.S. 448, at page 451, 77 S.Ct. 912, at page 915, 1 L.Ed.2d 972, Mr. Justice Douglas, speaking of Section 301(a) of the Labor Management Relations Act, says:

"'* * * authorizes federal court's to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements.'"

And then there is a further quotation from the *Lincoln Mills* case relating to the applicability of the Norris-LaGuardia Act.

In the Retail Clerks Union v. Alfred M. Lewis, Circuit Judge Duniway has very carefully examined all of the cases decided up to the time that the opinion was written and reached the conclusion that the trial court had jurisdiction under Section 301 of the Labor Management Relations Act, and that the Norris-LaGuardia Act did not deprive the

court of jurisdiction to grant any of the relief prayed for in the complaint; the trial court, speaking through Judge Mathes, a highly-respected District Judge, having dismissed the action for lack of jurisdiction.

There are a number of other cases, all cited by Judge Duniway, which point out the jurisdiction of the court in regard to actions in which there is an arbitration clause in the labor-management agreement.

■ There can be no question, in the opinion of this Court, that the determination of the meaning of the labor-management agreement in question is a matter within the jurisdiction of this Court, as pointed out in International Union, United Auto., etc., Local 391 v. Webster Electric Company, a decision of the Seventh Circuit, 299 F.2d 195.

Another decision which is very carefully written and which covers a similar matter is Local Division 1098, Amalgamated Ass'n of St. Elec. Ry. & Motor Coach Emp. of America v. Eastern Greyhound Lines, 225 F.Supp. 28, a 1963 opinion by Judge Alexander Holtzoff in the United States District Court for the District of Columbia. And that is a case which appears to be closer to being in point than any other decision which has been cited.

Counsel for the defendant has cited numerous cases in support of its position that there is no jurisdiction in this Court under the Norris-LaGuardia Act. But, like the cases cited by the plaintiff, each is distinguishable from the matter which is now before the Court. And while all of the opinions make very interesting reading, they do not serve the purpose of furnishing to this Court any real authority which can lead us to the correct answer.

There can be no question, under the *Lincoln Mills* decision, but what a District Court has authority to entertain an action for injunctive relief to require, in that case, an employer, to comply with the terms of contract which, by its

terms, requires binding arbitration, or non-binding arbitration, I suppose; either way.

What the Court says in that case is, in effect, the parties having agreed to submit the matter to arbitration, despite the Norris-LaGuardia Act the District Court has the jurisdiction and authority to require them to arbitrate a labor dispute, and that it can implement the arbitration clause by the use of the injunctive process, despite the terms of the Norris-LaGuardia Act.

It is a little difficult to read the *Lincoln Mills* case in 1957 and then read the Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440, in 1962. As a matter of fact, this Court only reaches the conclusion that it is impossible to put the two together. We recognize that the *Sinclair Refining* case and the *Evening News* case are interesting. There are many other decisions which appear to be in hopeless conflict, which have by some means been found not to be in conflict in the United States Supreme Court, all of which are discussed in the Retail Clerks Union Local 1222 AFL-CIO v. Alfred M. Lewis decision 327 F.2d 442. (C.A. 9)

As pointed out to counsel for plaintiff, it is extremely difficult for this Court to read the Norris-LaGuardia Act, which has been cited, and reach any conclusion that would permit this Court to issue an injunction in any case involving a labor dispute.

It is equally difficult for this Court to accept the premise that it has authority, under Section 301, to interpret a labor-management agreement and fashion a remedy, under *Lincoln Mills*, and that it has authority to grant an injunction to protect the jurisdiction of arbiters where there is an arbitration clause in a contract; but, when it has the same jurisdiction as the arbiters to interpret the contract and fashion a remedy, that it does not have authority to protect the Court's own jurisdiction.

And, frankly, it places the Court in what could only be termed a hopeless dilemma; which forces the Court, then, under such circumstances, to resort to the general rules of equity. And under the general rules of equity, the defendants are in a rather precarious position.

As pointed out, and undisputed, there are three employees involved, two of them having seniority of fifteen years or more each, the other having seniority of five years.

It is argued by the defense that they have a complete remedy in a damage action, a conclusion which the Court is unable to accept. A damage action can never restore seniority, and I have yet to find any case which furnishes a measure of damage for the loss of fifteen years of seniority, the deprivation of which is ordinarily the subject matter of negotiation.

We recognize that it is claimed and undisputed that the defendant has been unable to make a profit through the operation of its Marquette distribution plant. There has been no opportunity to the plaintiff to dispute that. I question whether they would seriously dispute it.

There is no claim that the defendant's action is for any purpose except for economic reasons. There is no claim of any animus on the part of the employer toward the union, a situation which does not prevail in the ordinary case which is before the District Court.

It is pointed out by the defendant, in an affidavit which is on file, that the branch has been operating for twenty-five years; that it started losing money in November of 1967, approximately one year ago; that it has continued to lose money at varying rates since that time, as set forth in the affidavit of Mr. Robert Zachar, the industrial relations manager for the defendant company. The loss, since December of 1967, has fluctuated, but the heaviest loss was in September, 1968; and, with the exception of one other month, the next heaviest loss was in October, 1968; which would indicate that there is no reason to anticipate that the losses will be reduced.

We recognize that there is no method provided for recovery of any monetary loss sustained by the defendant company in the event that the ultimate decision should be in favor of the company and against the union. And while the Teamsters Union is not a poor and underprivileged group as an organization, in reality the involved people here are three drivers working out of the defendant's plant in Marquette.

▇ The Court has, therefore, concluded that under the decisions, and particularly as reviewed in Retail Clerks v. Alfred Lewis, supra, and Local 1098 v. Eastern Greyhound Lines, supra, the Norris-LaGuardia Act should not be applicable to a situation such as this, any more than it was applicable to the situation presented to the Supreme Court of the United States in *Lincoln Mills*.

In other words, this Court should have the same authority to preserve its jurisdiction and maintain the status quo while it resolves an issue as to the interpretation of the contract as would be afforded to a group of arbiters empowered to do the same thing.

The Court further concludes that while perhaps some monetary provision could be made for the affected employees, as the situation now presents itself the loss of the seniority which they have gained under the terms of the labor-management agreement would be an irreparable loss.

The Court recognizes that there is a potential remedy available under the Labor Management Relations Act, under the terms of which an unfair labor practice has been filed with the National Labor Relations Board, with the request that that board institute proceedings under Subsection (j) of Section 160 of Title 29, U.S.C.A.

The Court also recognizes, and concludes, that this procedure could not result in an expeditious handling which would insure the continuation of the operation in Marquette until the disposition of the unfair labor practice complaint.

And the Court, as a matter of practicality, recognizes that in the event that the affected employees should prevail, the company could refuse to comply with the order for enforcement or with the order pursuant to the decision; and if the company in the interim period should sell or otherwise dispose of its facility in Marquette, it would be questionable as to whether any Court of Appeals would enforce an order requiring them to construct or otherwise acquire a new facility in Marquette during the balance of the life of the contract in question.

In other words, the affected employees, if the union prevails on the unfair labor practice complaint, would have a remedy, but it would be extremely difficult to afford them relief in the event they prevail.

So for the reasons herein stated, the Court is satisfied, as a matter of equity, an injunction should issue, with the understanding that unless appealed, the matter will be heard in January on the merits.

The hearing will be held in Marquette, in the Northern Division of this Court, which is the location where the dispute arose. There will be no postponements and no continuances, except as they may be a result of action in the Court of Appeals for this Circuit. And the Court plans on holding a session in Marquette in January, and notes in passing that no irreparable damage will be done to the defendant company between the period from now until January, whether they sell the facility or not in the interim period.

You may present the appropriate order.