TECHNICAL, OFFICE AND PROFESSIONAL WORKERS UNION, LOCAL 757, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, by its Trustee ad litem, William R. Stever

v.

The BUDD COMPANY.
Civ. A. No. 72–1135.

United States District Court,
E. D. Pennsylvania.

June 15, 1972.

Richard Kirschner, Wilderman, Markowitz & Kirschner, Philadelphia, Pa., for plaintiff.

Carter R. Buller, Montgomery, McCracken, Walker & Rhoads, John C. Wright, Jr., Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION, AND CONCLUSIONS OF LAW

NEWCOMER, District Judge.

Plaintiff has filed a petition for a preliminary injunction essentially seeking to restrain the defendant from moving its corporate headquarters to Troy, Michigan, pending arbitration construing the labor contract between the parties.

### FINDINGS OF FACT

1. Plaintiff, Technical, Office and Professional Workers Union, Local 757, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), is an unincorporated association, a labor organization representing technical, office and professional employees for the purposes of collective bargaining. Plaintiff brings this action by and through its President William R. Stever, as its Trustee ad litem.

2. Defendant, The Budd Company, is a corporation organized and chartered under the laws of the Commonwealth of Pennsylvania and does business by maintaining a manufacturing plant and offices at Hunting Park Avenue, Philadelphia, Pennsylvania.

3. Plaintiff is a labor organization within the meaning of the National Labor Relations Act, as amended, and particularly Section 2(5) thereof, 29 U.S.C. § 152(5).

4. Defendant is an employer engaged in an industry affecting commerce within the meaning of the National Labor Relations Act, and particularly Section 2(2) thereof, 29 U.S.C. § 152(2).

5. This Court has jurisdiction over this action complaining of a violation of a contract between plaintiff and defendant under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

6. Plaintiff is the duly recognized bargaining representative for all of defendant's office, clerical, technical and restaurant employees, with certain exceptions, employed at defendant's Hunting Park Avenue, Philadelphia, Pennsylvania, and Fort Washington, Pennsylvania, plants. The International Union, United Auto Workers of America, UAW (hereinafter "International") also represents these same employees as part of a multi-plant collective bargaining unit governed by the National Office Agreement.

7. Plaintiff and defendant are parties to a national agreement between defendant and plaintiff's parent international union, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW. Plaintiff and defendant are also parties to a local collective bargaining agreement between themselves dated March 3, 1971.

8. Article V, Section 1, (a) through (j) of the local collective bargaining agreement sets forth the agreed upon grievance procedure.

9. The parties to this action agree that the subject matter of this controversy is a proper one for arbitration.

10. Plaintiff alleges that the proposed action by defendant constitutes a clear violation of Article XIII, Section 2 of the local collective bargaining agreement. Article XIII, Section 2 provides as follows:

"Non-Bargaining Unit Employees.

Employees not covered by this Agreement shall not perform any work regularly performed by employees covered by this Agreement.".

11. Defendant alleges that it's proposed action is sanctioned and governed by Article X of the National Collective Bargaining Agreement which provides as follows:

"Except where prohibited by law, whenever the Company transfers operations or departs from any plant(s) covered by this Agreement to a vacant plant which is newly acquired or built by the Company, employees engaged on such operations or employed in such departments may, if they so desire, be transferred to the new plant with their full Company seniority."

and Articles II and XI of the National Collective Bargaining Agreement.

12. On March 1, 1972, defendant through its principal labor relations managers called a meeting with officers and officials of plaintiff and advised them that as a result of a contemplated reorganization of defendant's corporate structure certain corporate functions performed in Philadelphia by members of plaintiff Union would be transferred to a new Company facility in Troy, Michigan, a suburb of Detroit.

13. The total reorganization of the corporate structure is to be accomplished by an expenditure in excess of $500,000 and is to eliminate the duplication of corporate functions.

14. On March 23, 1972, defendant through its principal labor relations managers called a meeting with plaintiff's Grievance and Negotiating Committee and at said meeting furnished plaintiff with further information regarding the reorganization of its corporate structure and the attendant relocation to Troy of certain corporate functions being performed in Philadelphia by members of plaintiff Union. Specifically, the months of June or July were mentioned as the time of the transfers from Philadelphia and the jobs held by members of plaintiff which were to be transferred were identified. The representatives of plaintiff and defendant discussed the mechanics of advising employees of their rights under Article X of the National Collective Bargaining Agreement and determining which of the affected employees intended to exercise such rights. At no time during that meeting or subsequent thereto did plaintiff challenge defendant's right to relocate certain corporate functions to Troy.

15. During the period March 23, 1972, through March 27, 1972, twenty-one members of plaintiff whose jobs were being transferred were given an opportunity to indicate in writing whether or not they wished to exercise their right to transfer in accordance with Article X of the National Collective Bargaining Agreement. During the period March 27, 1972, through April 3, 1972, all of said members of plaintiff either indicated in writing that they did not wish to transfer or refused to sign. Any employee desiring additional time to consider transferring was granted it. At no time during the period March 23, 1972, to April 3, 1972, did any of the affected employees or plaintiff on their behalf protect defendant's right to transfer these jobs to Troy.

16. On May 11, 1972, by letter, the Union through its President, William R. Stever, informed the Company of the following, in part:

"Please be advised that this Union intends to protest vehemently your action in taking work out of our bar-

gaining unit and having it performed by other Company employees. We will file appropriate grievances at the appropriate time.".

17. On May 25, 1972, by letter, the Company through its Labor Relations Manager, Harper E. Adams, replied in detail to the Union's letter of May 11, 1972, and formally set out the steps to be taken in the move.

18. On June 8, 1972, the fourteen members of the bargaining unit who were subject to the move to Troy were given formal notice of their lay-off effective June 16, 1972.

19. The defendant had planned and publicly announced that its new corporate offices in Troy would be operational by June 19, 1972. By June 19, 1972, approximately 121 people of the ultimate complement of 134 would be employed in defendant's Troy facility. Of these 121 people, 50 are management employees (executives, managers and professionals) from the Automotive Division headquarters, 25 are non-management employees from the Automotive Division headquarters, 32 are management employees from Philadelphia and 14 will be filling jobs previously rejected by plaintiff's members who refused to exercise their right to transfer. An additional 8 jobs previously performed in Philadelphia will be transferred to Troy in August.

20. When plaintiff finally filed its grievance on June 8, 1972, plaintiff delayed resolution of the dispute by postponing unilaterally without explanation a scheduled June 12, 1972 meeting between plaintiff and defendant on said grievance to June 19, 1972. Thus at the time of bringing this action for a preliminary injunction, plaintiff does not have defendant's formal answer to the grievance, because, in accordance with the grievance procedure of the local collective bargaining agreement, defendant cannot file its answer until after the aforesaid fourth step grievance meeting takes place.

21. On June 12, 1972, a complaint was filed and a Motion for Preliminary Injunction made. On June 13, 1972, after actual notice to the Company, a hearing was held on the Motion for Preliminary Injunction.

22. At the time of this hearing both parties indicated that they have every intention of moving this controversy to arbitration in the shortest amount of time possible.

## DISCUSSION

The Court in deciding a motion for a preliminary injunction must balance the conveniences of both parties thoroughly before granting or denying the injunction. It is well settled law that the Court cannot rule on the merits of the controversy where the parties have agreed to binding arbitration.[1] This Court in no manner seeks to influence the decision of arbitration and no further discussion will be had on the merits of the controversy which is a proper subject of arbitration. The sole issue before the Court is the propriety of granting or denying a preliminary injunction which seeks to prevent the layoff of fourteen employees and the attendant effects on an additional unknown number of employees as a result of the operation of the seniority bumping system.

For a preliminary injunction properly to issue there must be a showing of irreparable harm which would outbalance any inconvenience which the party against whom the injunction is issued would suffer. The facts as presented here show that fourteen people would immediately be put out of work if the unit was moved to Troy, Michigan on June 16, 1972. The termination of these jobs creates a domino effect. Each employee involved is allowed to bump any employee with lesser se-

1. See United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

niority until the fourteen employees with the least seniority in the unit are bumped out of jobs completely. Therefore, the number fourteen in a vacuum does not clearly show what the ultimate impact will be on X number of people to the Nth power in terms of changing jobs and working relationships. True, the Union negotiated for seniority and its implicit bumping effects when lay-offs are to be made, but the bumping process should not be set into motion if the lay-offs are in violation of the collective bargaining agreement. The change in jobs is not the only inconvenience which the employees will suffer. Fourteen employees will be put out of work which would cause a tremendous disruption in their personal lives and the personal lives of their families. This is the type of harm which is irreparable. If the Union succeeds in arbitration, an award of money damages will not effectively compensate the affected employees for all losses which would be sustained by an improper lay-off. This Court is in agreement with the view of Judge Cohen expressed in International Union of Electrical, Radio and Machine Workers, AFL-CIO, et al. v. Radio Corp. of America, (1972), that the monetary remedy alone is too narrow and inadequate a remedy when irreparable harm is at stake. The Union has established to the satisfaction of the Court that they will suffer irreparable harm if an injunction is not granted. Therefore, this Court will enjoin the Budd Company from laying-off the fourteen employees pending the outcome of the arbitration, provided the Union posts a bond as will be prescribed by this Court.

This Court is not unmindful that the Company will suffer some inconveniences as a result of this injunction. We are well aware of the defendant's allegations that thirty-two management people have moved or will move to the new corporate headquarters in Troy by June 16, 1972. The arbitrator has no authority over these management people since they are not members of the collective bargaining unit. The arbitrator's award will affect the fourteen Union members only, and the effect on the management people cannot be a heavy stone on the Company's side of the balance scale. The Company will have to decide whether or not these people should return to Philadelphia, or, if they have not left, remain in Philadelphia since the Union does not in its injunction motion seek the return of management personnel. It is difficult to perceive how these management people would be precluded from performing their functions because of a delay in transferring supportive help from Philadelphia. Inconvenienced because of lack of supportive help,[2] yes, but not to the extent of preventing them from performing their management function; nor anywhere near as inconvenienced as the employees who would be put out of work because of the move.

The Court is also well aware of the potential financial losses which the Company may suffer. This again is not a heavy stone on the Company's side of the scale because the Company was not able to set out at the hearing what economic losses it may suffer if the move were prevented or delayed, if any. The only figure available was the $500,000 cost of the total corporate reorganization in all phases of the Company. The Court does not envision the catastrophic results the Company perceives if the move were delayed for a short period of time to await the outcome of an arbitrator's decision.

The purpose of a bond in a preliminary injunction situation is to cover any damages which the party seeking to oppose the injunction may incur if an ultimate disposition on the merits of the controversy is favorable to the party enjoined. If the arbitrator should rule in favor of the Company, then any financial losses the Company may incur as a result of the injunction would be protected

---

2. This injunction will prevent the lay-off of fourteen supportive people in Philadelphia, but will not enjoin the Company from hiring other people in Troy if it so desires for the injunctive period.

to the extent of the bond and recoverable by the Company.

In granting the injunction, the Court is not endorsing the procedural delay which the Union occasioned. The recent Supreme Court holding in International Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), does not preclude this Court from a consideration of the doctrine of laches when sitting in judgment on a motion for a preliminary injunction.

The Company had made prior announcements as early as 1969 that it intended to move corporate headquarters, but those announcements were not really decisive, nor was the move definite or inevitable. In looking at the delay the Court feels the Union was on actual notice of the impending move, as opposed to prior speculative discussions, as early as March 1, 1972. The move at this time may still have been speculative as far as the Union was concerned, and it is understandable why a grievance was not filed at that time. Between the meeting of March 23, 1972, among the Company's principal labor relations managers and the Union's Grievance and Negotiating Committee, and March 27, 1972, when employees were given an opportunity to indicate in writing whether or not they wished to exercise their right to transfer, the Union was made aware of the Company's firm intention to move. The harm had become apparent, but may not have become imminent at this time. It is more realistic to view the harm as becoming imminent sometime between the March 27, 1972 letters to employees, and the Company's letter of May 25th formally stating its intentions in detail. The Union has indicated that the time for filing of the grievance was June 8, 1972 when notice of lay-off was given to the employees by the Company. We do not intend to draw any legal conclusions as to the proper time of filing the grievance, but do feel the Union could have acted more expeditiously in filing the grievance.

■ The Union's delay, however, does not reach the level which would tip the scale of conveniences and cause this Court to deny a preliminary injunction. The Company, it must be noted, could have forced the grievance procedure, had it issued the lay-off notices well in advance of the June 16, 1972 moving date rather than on June 8, 1972. In the light of the irreparable harm that an unknown number of people may be likely to incur if they are denied employment or victimized by bumping in breach of the collective bargaining agreement, the Union's delay, though not exemplary, would not be such as to bar the issuance of a preliminary injunction.

The last point which this Court feels is relevant to the issues presented is one of policy. It is the duty of the Courts to fashion from the policy of our national labor laws a Federal substantive law to apply in suits under § 301 of the Labor Management Relations Act. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

■ The Budd Company has in essence put the "cart before the horse". The Company has followed a course of conduct which seems to indicate that they will move the corporate headquarters first and worry about arbitration and the collective bargaining agreement later. This is not the policy of our national labor laws. The policy as set forth in the Steelworkers Trilogy, supra, is to encourage the peaceful settlement of labor disputes through arbitration. If the Court has the power to order specific performance of a contract covenant to arbitrate, it has the collateral power to take steps that would prevent rendering the result of the arbitration futile and ineffective. See Local Division 1098 Amalgamated Association of Street, Electric, Railway and Motor Coach Employees of America, AFL-CIO v. Eastern Greyhound Lines, D. C., 225 F.Supp. 28 (1963). We are firmly committed to that policy of promoting settlements of labor disputes through arbitration, and that policy can be further effectuated here by the granting of a preliminary injunction.

 Lastly, the granting of injunctive relief restraining defendant Company's action pending a determination by the arbitrator of the right of defendant to pursue such action under the terms of the collective bargaining agreement would not contravene the policy of the Norris-La Guardia Act, 29 U.S.C. § 101 et seq. Boys Markets, Inc. v. Retail Clerk's Union Local, 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

The Court has the firm intention to do everything in its power to expedite the final arbitration of this grievance without in any way modifying, or impinging on the collective bargaining agreement, nor denying either party the benefit of its bargain in entering into such agreement. The parties have both asserted that they will do everything possible to expedite the ultimate resolution of this controversy. The Court, on its own investigation, has determined that an ultimate resolution can be had within fifteen (15) days of the entry of its Order and there is no reason why that should not be done. Time is of critical essence to the Company and the adjudicating process must be made equal to the challenge which this controversy presents. A preliminary injunction will issue for that duration of time.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the plaintiff's cause of action and the relief sought thereunder, by virtue of the provisions of Section 301 of the Labor Management Relations Act of 1947, as amended, 28 U.S.C. § 185.

2. The grievance filed in accordance with the collective bargaining agreement is arbitrable.

3. The parties are prepared to pursue the grievance through all steps of the grievance procedure up to and including arbitration, as provided for in the collective bargaining agreement, and in an expedited manner in order to avoid unnecessary delay.

4. Plaintiff has established to the satisfaction of the Court that its members will suffer irreparable harm if an injunction is not granted pending arbitration of the grievances.

5. Plaintiff is entitled to an order enjoining the defendant from laying-off the fourteen employees given notice effective June 16, 1972 who would be affected by the transfer of work provided the Union posts a bond as will be prescribed by this Court until the ultimate disposition of the controversy by arbitration.

## ORDER

And now, to wit, this 15th day of June, 1972, it is hereby ordered that The Budd Company be preliminarily enjoined from laying-off fourteen employees who would be affected by the transfer of work to Troy, Michigan, and given notice effective June 16, 1972, for a time period of fifteen (15) days from the entry of this Order.

It is further ordered that the plaintiff shall post a bond in the amount of One Hundred Thousand Dollars ($100,000.-00) as security for economic losses the Company may incur if the Company shall prevail at arbitration.

It is so ordered.