**AMALGAMATED FOOD EMPLOYEES UNION, LOCAL NO. 590, Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO**

v.

**NATIONAL TEA COMPANY.**

Civ. A. No. 72–632.

United States District Court,
W. D. Pennsylvania.

Aug. 17, 1972.

Joseph Maurizi, Pittsburgh, Pa., for plaintiff.

John Wayman, Pittsburgh, Pa., for defendant.

## OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION

KNOX, District Judge.

In this case involving the issuance of what has been aptly described as a "Boys Market" injunction by the Court of Appeals for this Circuit,[1] we have a problem arising out of a Collective Bargaining Agreement between the plaintiff and the defendant through its Youngstown Division dated March 29, 1972, and extending from December 12, 1971, to and including December 15, 1973.

The defendant on July 28, 1972, posted in certain of its stores a notice that they would be closed on August 5, 1972, at 6:00 p. m. Certain employees testified they had not seen this notice. The union on the same day sent a letter to the company demanding arbitration of certain issues. On Tuesday, August 2, 1972, in the afternoon the union filed this action against the employer seeking preliminary injunction and seeking to require the defendant to submit to arbitration. The court at once fixed August 4, 1972, for hearing and notice was duly given the defendant. On August 4, 1972, a hearing was held which lasted nearly all day. At the conclusion of the hearing, a Temporary Restraining Order was entered to expire in ten days on August 14, 1972, with reasons therefor attached as required by Rule 65(d). This order required the parties to take steps preparatory to arbitration, enjoined the defendant from terminating and/or permanently laying off any of its employees covered by the labor contract, to meet with the employees in an endeavor to reach a satisfactory solution as required under Section 3 of the letter incorporated in the contract at page 38 (The contract is in evidence being plaintiff's Exhibit 1) and to refrain, pending determination of arbitration, from entering into any contract for the sale of the stores which does not contain a clause binding successors and assigns in accordance with Article XXXI of the Agreement.

At the hearing on August 4, 1972, it developed that defendant had been negotiating with Fox Grocery Company for sale of 36 stores in its Youngstown Division. There had been no firm agreement, however, until August 3, 1972, the day before the hearing when a one-page letter was signed by the parties agreeing to close the transaction subject to certain conditions on Tuesday, August 8, 1972. (This letter, defendant's Exhibit 3, was not admitted into evidence.) This agreement, the purchaser testified, did not contain any clause making the Collective Bargaining Agreement binding upon the purchaser as required by Article XXXI. It further appeared that defendant had started to sell off its inventory in the stores involved and had continued to deplete the same after knowledge that the suit had been filed. It appeared that the company had notice of the suit no later than Wednesday, August 3, 1972, because on the evening of that day an officer of defendant appeared in Miami, Fla. to discuss the situation with certain union officials. No

---

1. Avco Corp. v. Local Union #787 of Internat'l Union, United Automobile, etc., Workers, 459 F.2d 968 (3d cir. 1972).

attempt, however, was made to arrive at "a mutually satisfactory conclusion" as to the rights of employees under Article XVIII, paragraph K as required by paragraph 3 of the letter on page 38.

At the time of issuance of the Temporary Restraining Order, hearing and argument on the application for preliminary injunction were assigned for Thursday, August 10, 1972. On this date additional testimony was taken which showed that there had been a meeting between the parties on Tuesday, August 8, but that nothing had been resolved. Also, at that time plaintiff verbally communicated to defendant a list of issues which it desired to have arbitrated but through some failure of communication the defendant apparently did not understand the issues as read by plaintiff's attorney although the differences seem to be largely differences in semantics.

Extensive arguments were had on the matter during the afternoon of August 10 and voluminous briefs were presented with reference to the issues. Since it was obvious that the court could not arrive at a conclusion and prepare a written opinion containing findings and conclusions as required by Rule 52(a) with respect to the preliminary injunction prior to the expiration of the Temporary Restraining Order at Noon on Monday, August 14, the court on August 11, issued an order extending the Temporary Restraining Order for these reasons until Noon, Monday, August 21. After review of all the evidence and the numerous arguments and authorities presented by the parties, the court has determined that in order to preserve the status quo pending resort to arbitration as required by the contract a preliminary injunction should be issued.

It appears there are 36 stores involved which have now been closed. This closing is preparatory to carrying out of the sale to Fox Grocery. It was testified that approximately 700 employees were employed in these stores in the area of Western Pennsylvania of whom 351 were full time employees entitled to protection under Article XVIII, Section K of the contract. Many of these employees have been employed by this company for a long period of years and their job, rights and status as provided under the contract will certainly be seriously jeopardized if they are permanently laid off or discharged at this time prior to a decision by the arbitrator on the matters at issue. At the first hearing, it appeared that their pension rights would be seriously endangered since it was testified that because the pension plan was put in effect only 3½ years ago there would be no vesting until January 1, 1973. One of the trustees of the pension plan testified at the second hearing that this was not true but he admitted he was only one of a group of trustees and that in any event legal opinions had been requested on this from counsel handling legal matters pertaining to the plan.

The controversies in this case revolve around certain provisions of the Collective Bargaining Agreement. Article XXXI provides that the agreement shall be binding upon the parties and their successors and assigns and shall remain in effect for its full term.[2] The letter dated March 13, 1972, on page 38 which it is agreed was a part of the contract provides in Section 3 for the discussions to arrive at a satisfactory conclusion heretofore mentioned.[3] (NOTE: All

2. "SUCCESSORS AND ASSIGNS. This Agreement shall be binding upon the parties hereto, their successors and assigns. It is the intent of the parties that the Agreement shall remain in effect for the full term of the Agreement, and shall bind the successors of the respective parties hereto."

3. "March 13, 1972
Mr. Joseph H. Sabel
Amalgamated Food Employees
Local No. 590
500 Penn Center Building
Pittsburgh, Pennsylvania 15235
Dear Mr. Sabel:
In addition to the Labor Agreement itself, the following understandings were

parties agree that the printed copy referring to Article XIX is a typographical error and that the same should read Article XVIII.) Article XVIII, paragraph K, provides for maintenance of status of full-time employees and attempts to relocate the same.[4] Article XVIII, paragraph subsection (a) provides:

"JOB SECURITY AND SENIORITY. The Company and the Union mutually agree that it is their intent and purpose to maintain the status of the present full-time employees and to effectuate this policy the following shall be done:

A. In the event it becomes necessary to change the status of a full-time employee, either by layoff or reduction to part-time status, the Employer and the Union shall immediately explore the possibilities for maintaining the full-time status of the employee by relocation where full-time work is available elsewhere within the seniority area.

If, after exploration at the above level, the matter is not resolved, the Company and the Union shall explore the possibilities for maintaining the individual's full-time status by relocation in the master seniority area and their Division area."

(There then follows certain other provisions relative to scheduling, seniority and reduction in layoffs.) Article XXII B spells out at length the procedures for arbitration. Of particular importance are the first sentence and the last four sentences in general providing that any dispute shall be submitted to arbitration which shall be binding on all parties and providing for no work interruption pending the decision of the board of arbitration.[5] This is supplemented by

reached during our recent contract negotiations:

(1) The Employer is permitted to machine clean store floors when necessary by professional floor cleaners.

(2) A part-time meat employee who is attending a government training program part of his time and is working part-time in the meat department shall be paid the apprentice hourly rate corresponding to his length of service.

(3) It was understood between the parties that should it become necessary for the company to cease operation of stores under the jurisdiction of this Labor Agreement with Local Union No. 590, either through closing or sale, the parties shall meet promptly for the purpose of discussing the application of Article XIX, paragraph K, in an attempt to arrive at a mutually satisfactory conclusion."

4. "The Company and the Union mutually agree to maintain the status of all full-time employees on the Company's payroll as of January 1, 1970, who have completed their probationary period and excluding temporary full-time employees such as those relieving for vacations, sickness, leave-of-absence, etc. This maintenance of full-time status shall not apply to any full-time employee separated from the Employer's payroll after January 1, 1970, or in the event of a strike or other labor difficulties, emergency, including national emergency, which affect the normal operation of the Company's stores. It shall not apply in any week that an employee is late or absent. In case of emergency the Employer will make every effort to relocate the employees as quickly as possible. When full-time work is no longer available for an employee on such full-time status in his store and he does not take such full-time job offered, but accepts part-time work as provided in this Article XVIII, he will be considered as having waived the maintenance of full-time status as provided in this paragraph."

5. "GRIEVANCES AND ARBITRATION. * * * * B. Any dispute over the interpretation of or application of the terms of this agreement arising between the parties shall be submitted to the Board of Arbitration in the event satisfactory adjustment cannot be made between the parties, with the understanding that such disputes, grievances and controversies must be brought to the attention of the party concerned in writing within thirty (30) days after the incident occurs, if the incident is to be considered cause for grievance. . . . Before submitting a difference to the three (3) man Arbitration Board, the parties shall set forth in writing the specific issues to be arbitrated, and the Board shall confine its award to such submission Agree-

Article XXI providing for no strikes, lockouts or stoppages pending arbitration.[6]

### (I) *Arbitrability of Rights of Employees.*

■ If we were dealing with the ordinary employer-employee relationship, we would of course have to recognize that the members of plaintiffs' union were engaged in employment at will and subject to discharge at any time without cause at the whim of the employer but here we have a Collective Bargaining Agreement which confers valued rights upon the employees and provides for arbitration of any disputes concerning the same.

This brings the case within the provisions of Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 [7]. The Supreme Court has many times held under this Act that the Federal Courts have the power to compel compliance with these agreements to arbitrate. Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

In United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the court said:

"The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment . . . that was bargained for."

Again, in United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409 (1960), the court stated:

" . . . the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator."

Again, in John Wiley & Sons v. Livingston, 376 U.S. 543, 557–558, 84 S.Ct. 909, 918, 11 L.Ed.2d 898 (1964), the court said:

"Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Even under a contrary rule, a court could deny arbi-

---

ment. The majority decision of the Board shall be binding upon the Union, the employee and the Company and it shall be submitted in writing within ten (10) days after the conclusion of the hearing unless the time be extended by mutual agreement of the Company and the Union. There shall be no work interruption of any kind, pending the decision of the Board of Arbitration. The expense of the third (3rd) member of the Board shall be shared equally by the parties hereto."

6. "NO STRIKE—NO LOCKOUT. There shall be no strikes, lockouts, or stoppages of work of any kind pending the handling of differences or complaints in accordance with the arbitration procedure. The Union agrees that it will

not refuse to cross a picket line until same has been duly sanctioned by the International President of the Amalgamated Meat Cutters and Butcher Workmen of North America, Chicago, Illinois, and until the Company has been officially notified by the Union."

7. "(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

tration only if it could confidently be said not only that a claim was strictly 'procedural', and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. In view of the policies favoring arbitration and the parties' adoption of arbitration as the preferred means of settling disputes, such cases are likely to be rare indeed. In all other cases, those in which arbitration goes forward, the arbitrator would ordinarily remain free to reconsider the ground covered by the court insofar as it bore on the merits of the dispute, using the flexible approaches familiar to arbitration. Reservation of 'procedural' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort."

We also have the case of Local 198 United Rubber, Cork, Linoleum & Plastic Workers of America v. Interco, Inc., 415 F.2d 1208 (8th Cir. 1969), where the court said:

"[1] Arbitration on 11–66 was not sought by a request made within the ninety-day period fixed by the contract. The union asserts that Interco had in the past consistently rejected arbitration of all claims arising out of the plant closing and that it was excused from performing the useless act of demanding arbitration on the grievances. In our view, this issue presents a procedural matter which under John Wiley & Sons v. Livingston, 376 U.S. 543, 556–557, 84 S.Ct. 909, 11 L.Ed.2d 898, should be resolved by arbitration."

Again, in Palestine Tel. Co. v. Local Union 1506, 379 F.2d 234 at 240 (5th Cir. 1967), the court said:

"Therefore, the question of whether there was· a procedural fault in the processing of the grievance which would permit the Company to refuse to arbitrate the dispute in question will not be determined by this Court. That matter will be left to the arbitrator."

Finally in Boys Market v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), it is clearly held that despite the anti-injunction provisions of the Norris-LaGuardia Act the Federal Courts had power to enjoin breach of obligations under a Collective Bargaining Agreement enforceable under Section 301(a) of the Labor-Management Relations Act (29 U.S.C. § 185) where the contract provided for binding arbitration of disputes. The result of all of these cases is a clear holding that all matters arising under such agreements must be left to the expertise of labor arbitrators if the issue in question is obviously covered by the agreement and it is for the arbitrator not this court to determine whether proper grievance procedures have been followed. We do not decide or express any opinion as to what the decision of the arbitrator should be in determining questions arising under this contract including questions of procedure thereunder. As was said by this court recently in a similar suit brought by a union against an employer to compel arbitration, District 50 Allied and Technical Workers v. Brockway Pressed Metals, 328 F.Supp. 1258 (W.D.Pa.1971):

"We should comment that usually this court is concerned with suits by employers complaining of wildcat strikes by Labor unions in violation of their contracts and asking the court for an injunction to compel the union to submit the dispute to arbitration. Certainly, if there was a wildcat strike by this union over the alleged grievance resulting from the discharge or layoff of this employee, the employer would be here seeking an order of this court to prevent the strike and requiring the union to abide by its agreement to submit the dispute to arbitration. Now that the shoe is on the other foot, we must require the employer to abide the agreement."

The union in a letter dated July 28, 1972 (plaintiff's Exhibit 3) stated that certain issues were for arbitration and referred to Articles III, VIII, XVIII, XXI, XXXI and XXXII of the contract. It appears that at a meeting held August 8, 1972, the union specified certain issues for arbitration but through the failure of communication heretofore mentioned the company obtained a different impression of what was sought. We note, however, that reference has been made to the question of the successors and assigns clause as being required as a condition of sale (Article XXXI). Reference has also been made to attempts to reach a satisfactory conclusion under paragraph 3 of the letter on page 38 and also to rights claimed by the union under Section 18K and 18A relative to relocation and also claims under Articles XXI and XXII that there should be no work interruption of any kind pending arbitration.

■ While the issues to date have not clearly been defined, it is noted that under Article XXII the parties before submitting a difference to the three-man arbitration board shall set forth in writing the specific issues to be arbitrated and the board shall confine its award to such submission agreement. The arbitration procedures are very precise and have specific time limits set forth as to each step and the parties will be required to adhere to this timetable. The court has noted that there is no time limit, however, on the selection of the third arbitrator on a panel to be furnished by the Federal Mediation and Conciliation Service and it is for this reason so as to prevent any delays in the proceeding, which is obviously of the utmost importance and urgency for both sides, that the court directed that all of these procedures be completed on or before September 4, 1972, and we will so require in the preliminary injunction to be issued hereunder. Under the contract the parties would have until then to reach an agreement as to the specific issues to be arbitrated. At the present time the differences between these parties are so pronounced that they cannot agree on what the issues are and they may not be able to reach an agreement by September 4. Even so, we do not believe that this failure of one party or the other to agree to his adversary's issues should frustrate the arbitration and, on the other hand, we do not believe that the court should be required to frame these issues for the arbitrators. Basically, in this situation it is the union's demands which are the issues to be submitted to the arbitrators and if such situation should develop the union may submit its issues to the arbitrators followed by a counterstatement of the issues from the company and this matter of procedure will be for the arbitrator to decide.

In the first hearing preceding the issuance of the Temporary Restraining Order, we indicated that the employer had not complied with the provisions of paragraph 3 of the letter on page 38 and had not met with the union in an endeavor to work out a mutually satisfactory conclusion as to the rights of discharged or laid off employees. It appears that since that hearing there has been one such meeting and we are again in this preliminary injunction admonishing the parties to continue their efforts in this regard but whether these efforts have been proper and whether this is an issue upon which an arbitrator should make a decision, we will leave to the arbitrator.

The foregoing discussion disposes of the question of arbitrability and also makes it appear that plaintiffs are likely to succeed in their contention that all disputes under this contract including all or some of the claims now made by them are subject to arbitration. We do not at this time express any thoughts on the ultimate outcome of the arbitration since these matters are for the arbitrator.

We will now turn to the usual considerations in addition to likelihood of success on the merits which govern the issuance of preliminary injunctions.

## II. *Adequate Remedy at Law.*

Defendant earnestly argues that plaintiffs have an adequate remedy at law, that at most the arbitrator can only enter an award for money damages, that defendant is a strong solvent national corporation and will be able to pay the amount which the arbitrators award, if any. This overlooks the fact that not only jobs are at stake here but also pension rights whose status is unclear as heretofore noted and also the question of relocation and seniority rights under paragraphs 18A and 18K of the contract and paragraph 3 of the letter on page 38. In addition there is the question of the applicability of the successors and assigns clause (Article XXXI). As to these, monetary damages may prove inadequate and the expertise of the arbitrator is needed.

Entirely aside from this problem, it is questionable whether the immediate loss of jobs and wages does not constitute a situation where there is no adequate remedy at law and justifies the issuance of a preliminary injunction pending the arbitrator's award. If this is not so, then many courts have been issuing preliminary injunctions where there was an adequate remedy at law. Thus, in Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Rr. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960), a case involving elimination of certain jobs on the railroad, an injunction was issued requiring the maintenance of the status quo pending proceedings before the National Railroad Adjustment Board. The court held that the lower court was within its rights in requiring the railroad to either restore the situation which existed prior to its orders eliminating jobs or else pay the employees adversely affected by the orders the wages they would have received had the orders not been issued. The Supreme Court also held that the District Court was within its rights in considering the hardships which would arise if the employees were required to await a long delayed decision and also the results of discharge of employees from positions long held and dislocations from their homes.

Again in United Steelworkers of America v. Blaw-Knox Foundry & Mill Machinery Inc., 319 F.Supp. 636 (W.D. Pa.1970) Judge Gourley of this court issued a preliminary injunction restraining the employer's action in reducing the number of employees pending a determination by the arbitrator of the right of the employer to engage in such action under the Collective Bargaining Agreement. See also, Local Division 1098, c–1c. v. Eastern Greyhound Lines, D.C., 225 F.Supp. 28; IUE v. Radio Corp. of Amer. (E.D.N.J.1971), 77 LRRM 2201. More recently in this Circuit our Court of Appeals reversed the District Court for the Middle District and directed a preliminary injunction to issue in a Boy's Market Case: Avco Corp. v. Local Union # 787 of International Union, United Automobile Workers, supra. As a result of these cases, it is our opinion that plaintiff's remedy at law, if any, is not adequate, that plaintiffs need equitable relief and the issuance of a preliminary injunction is proper.

In the light of certain of the above cases, it would appear that the court could have enjoined the closing of the stores pending determination of these disputes by arbitration. This we would not do because of the testimony of the plaintiffs that the closing of the stores was a function of management and for the further reason that the Collective Bargaining Agreement seems to have envisaged the closing of stores by the employer and then proceeds to deal with the question of the rights of the employees in such circumstances. As previously stated, ordinarily employment such as we have here would be considered employment at will but the situation has to be considered in the light of the Collective Bargaining Agreement giving the employees certain rights which must be submitted to arbitration. Defendant has cited many cases revolving around the question of whether a labor contract such as this is binding on

successors and assigns of the employer, particularly where there is a provision to this effect such as we find in Article XXXI of plaintiff's Exhibit 1. Reference is made to the most recent case of NLRB v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972) and such other cases as United Steelworkers of America v. Reliance Universal, 335 F.2d 891 (3d cir. 1964). These cases are not in point since they involve the question of whether the purchaser of the business is bound by the Collective Bargaining agreement and this most recent pronouncement of the United States Supreme Court is that he is not but the purchaser does have to bargain collectively with the union. *See* NLRB v. Burns International Securities Services, *supra*. In the instant case, however, this is not the question. The question is whether under a clause such as contained herein, viz: Article XXXI, the employer in selling its business is bound to insert a clause in the sales agreement binding the purchaser to carry out the terms of the Collective Bargaining Agreement which still has a year and four months to run or whether the clause is meaningless. This problem again we will leave to the arbitrator.

III. *Balancing of Equities, Irreparable Harm and Preservation of Status Quo.*

What we have said relative to adequate remedy at law applies also to the question of irreparable damage to the plaintiff. When we turn to the question of irreparable damage to the defendant, we must remember that in cases of this kind the purpose of a preliminary injunction is to preserve the status quo insofar as is possible and practicable pending arbitration. For reasons above stated, we have not required defendant to keep the stores open but defendant did have a choice of either keeping the stores open and employing these workers or closing the stores and keeping them on the payroll pending arbitration. Defendant, according to testimony at the hearing on August 10, 1972, elected to pursue the latter course.

■ In considering the status quo to be preserved, it appears that the defendant has proceeded at its peril in the face of knowledge of this proceeding which it has had since at least August 2, 1972, and before the stores were closed. It has long been established that where a defendant with notice of an injunction proceeding completes the acts sought to be enjoined, the court may restore the status quo. Texas and New Orleans Railway Co. v. North Side Belt Railway Co., 276 U.S. 475, 48 S.Ct. 361, 72 L.Ed. 661; Porter v. Lee, 328 U.S. 246, 66 S. Ct. 1096, 90 L.Ed. 1199.

As a matter of fact, it appears to the court that the defendant has been engaged in a race against the law. While the announcement of closing the stores was posted on July 28 for closing on August 5, nevertheless, in the face of the knowledge of this proceeding which we find defendant had on August 2, as is shown by the trip of one of its officers to Miami that evening, defendant proceeded to do two things:

(1) It proceeded to deplete its inventory in the stores and sell it out at a 20% discount and now comes before the court complaining that the inventories are inadequate to reopen the stores and great expense would be incurred to reopen or to have kept them open.

(2) On Thursday, August 3, in the face of this litigation, despite the fact defendant had no prior firm agreement with the purchaser, defendant proceeded to enter into a one-page letter agreement covering this complicated transaction of sale. Exhibits were attached which were detached before the paper was produced in court, to provide for a closing on August 8. For some unknown reason, the defendant never followed up the production of this document by attempting to offer it in evidence after cross examination concerning it was completed. If defendant finds itself with problems as a result of these actions, all we can

say is that it should have anticipated this.

As stated in the reasons accompanying the Temporary Restraining Order, the purchaser on the stand has indicated no intention to abandon the transaction if it was not closed on August 8 and indicated that the persons who will operate these stores after the transaction is consummated are bound to go through with their proposals at any time up until December 1, 1972. In view of the requirements we have imposed as to the selection of the third arbitrator and time limits contained in the arbitration clause, there should be ample time to complete the arbitration well in advance of December 1 so that if defendant is entitled to go through with the transaction, no substantial harm will have been done.

Defendant further complains that by being forbidden to lay off or discharge the full-time employees, it is suffering irreparable hardship because it will be required to meet these payrolls and will have little chance of recovering the money if the arbitration results in its favor. At the time of the first Temporary Restraining Order, we had no specific facts as to losses to be incurred if the stores remained open, merely general statements.

At the second hearing, we did have more definite figures with a witness stating that these stores had incurred losses of $1,200,000 per quarter although we will have no definite figures. We have been told nothing about the allocation of various items of expense to the Youngstown Division to determine how these figures were arrived at. The only definite figures we have are those contained in the company's 1972 annual report (defendant's Exhibit A) which indicated that it had net income for 1972 of $8,920,253 although it is noted that there appeared to be a deficit in its cash position. To what extent the decrease in losses from not operating during the period of this preliminary injunction would offset the amount of wages to be paid, we have no information. Likewise, it does appear that a considerable amount of overhead and general administration expense has been inserted in defendant's Exhibit G "summary of expenses" in order to increase the total. It is the court's opinion, however, that some increase in the bond from $10,000 to $25,000 is indicated and we will so order.

We have had further complaints relative to the specificity of the Temporary Restraining Order which had to be drawn in haste late on a Friday afternoon when the stores were to be closed and the employees discharged the next day. We have attempted to remedy these complaints in the modification previously made in extending the Temporary Restraining Order and in the order directing the issuance of the preliminary injunction. An appropriate order will be entered.

We repeat that nothing herein contained shall in any manner be construed as indicating to the arbitrators the thinking of the court with respect to issues to be submitted to them, or to be in any way binding upon them.

There is further complaint as to the prohibition of lockouts in paragraph 2 of the orders. The problem of when a lockout is not a lockout within the meaning of the contract is for the arbitrators. All we can do is restrain defendant from taking any action which may be in violation of the contract (Article XXI) pending conclusion of arbitration.

The foregoing opinion contains the findings of fact and conclusions of law as required by Rule 52(a) and the reasons required by Rule 65(d).

## ORDER GRANTING PRELIMINARY INJUNCTION

And now, to wit, August 17, 1972, after two full and complete hearings with all parties present and testimony having been taken by this court on plaintiff's application for preliminary injunctive relief, and upon consideration of briefs and arguments of counsel,

It is hereby ordered and directed that a preliminary injunction issue against the defendant National Tea Company, its officers, agents and employees, pre-

liminarily restraining and enjoining the defendant as follows:

(1) To take steps preparatory to arbitration in accordance with the provisions of Article XXII Grievance and Arbitration Clause of the labor contract with plaintiff to ensure the selection of a third member of the panel on or before the 4th day of September, 1972, and to arbitrate all issues to be set forth in writing between the parties as provided in Article XXII. The plaintiffs are likewise directed to cooperate with the defendant in pursuing the arbitration procedures as set forth in Article XXII, to ensure the selection of the third member of the panel on or before September 4, 1972, and to set forth in writing the specific issues to be arbitrated and present the same to the defendant forthwith. In the event the parties are unable to agree upon a written submission of issues as required by Article XXII, either party may apply to the court for further orders with respect to this matter.

(2) Pending final and binding arbitration and/or final enforcement of the arbitrator's award in a court of law, if it becomes necessary, the National Tea Company is hereby enjoined and restrained from terminating and/or laying off any of its employees covered by the labor contract with plaintiffs. Nor shall defendant engage in any lockout of its employees as set forth in Article XXI of the contract.

(3) To meet with its employees' representatives in an endeavor to reach a satisfactory solution to the problems confronting the parties in accordance with the provisions of Section 3 of the letter on page 38 of the contract and to bargain in good faith to this end. If either party is of the opinion that the other party is refusing to meet in good faith in an attempt to arrive at a mutually satisfactory conclusion of the issues, such party may apply to the court for further directions with respect to this matter.

(4) To refrain, pending final and binding arbitration and/or final enforcement of the arbitrator's award in a court of law if it becomes necessary, from consummating any contract for the sale of the stores covered by the labor agreement with plaintiff which does not contain a clause making said contract binding upon plaintiff's successors and assigns in accordance with Article XXXI of the contract.

This preliminary injunction is to remain in effect until final and binding arbitration has occurred and/or final enforcement of the arbitrators award in a court of law, if it becomes necessary, or until a final decree is entered in this case.

This preliminary injunction when effective shall supersede the temporary restraining order heretofore issued on August 4, 1972, in this case as extended by order dated August 10, 1972, but shall not terminate any rights acquired or liabilities incurred under said temporary restraining order.

The plaintiff union shall post an additional bond with surety approved by this court in an additional amount of $15,000 or a total bond of $25,000 contemporaneously with the issuance of this preliminary injunctive order.