INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), et al., Plaintiffs,

v.

MILES MACHINERY COMPANY, Defendant.

Civ. No. 82–10261.

United States District Court, E.D. Michigan, N.D.

Dec. 21, 1982.

MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

I. *Introduction*

Plaintiffs brought this action seeking equitable and monetary relief relative to a dispute arising under a collective bargaining agreement (hereafter "Agreement"), entered into between plaintiffs and the defendant, Miles Machinery Company (hereafter "Miles"). The matter is presently before the Court as follows:

1.) Defendant's motion to dismiss; and

2.) Plaintiffs' motion for preliminary injunction requesting an order requiring that Miles specifically perform under the Agreement, arbitrate grievances pursuant to the Agreement and abide by an arbitrator's award conditionally reinstating three union committeemen as Miles employees.

The Court will address these motions jointly.

## II.  *Findings and Conclusions*

On November 12, 1982 the Court conducted a hearing on plaintiff's motion for preliminary injunction wherein the parties presented evidence and oral arguments. Having considered the matter and being fully advised, the Court hereby sets forth its findings of fact and conclusions of law. FR Civ P 52(a) and 65(d); 11 Wright & Miller, *Federal Practice and Procedure,* Section 2955, at 540.

## FINDINGS OF FACT

1.) Defendant, Miles Machinery Company, is a Michigan corporation, incorporated under the laws of the State in 1964.

2.) Plaintiffs are labor organizations within the meaning of Section 2(5) of the Labor Management Relations Act, 29 U.S.C. Sections 152(5) and 185.

3.) Plaintiffs have principal offices located in Michigan.

4.) Plaintiffs and Miles have been parties to a collective bargaining agreement first entered into in March, 1975.

5.) The agreement in question was renegotiated and became effective from May 7, 1981 through May 7, 1984.

6.) Article VII of the Agreement contains a grievance procedure providing for final and binding arbitration of disputes arising under the Agreement.

7.) On June 5, 1981, Miles filed a Chapter 11 petition in bankruptcy and thereafter continued to operate as a debtor in possession.

8.) On July 31, 1981, Miles filed an application with the Bankruptcy Court to reject its Agreement with plaintiffs. The application was denied initially, *In Re Miles Machinery Company,* No: 81–0388 (Bankr., ED Mich, decided June 17, 1982), and was again denied on a motion for reconsideration, *In Re Miles Machinery Co.,* No: 81–0388 (Bankr., ED Mich, decided October 29, 1982).

9.) On April 23, 1982, an offer was made by B & K Corporation and accepted by Miles and other interested parties providing, among other things, for the purchase of 100% of the outstanding stock of Miles upon the condition "that no employment contracts exist by and between the corporation and any of its employees." Plaintiffs did not participate in any discussions regarding this agreement.

10.) Based upon the accepted offer from B & K, a proposed plan of reorganization (hereafter the "Plan"), was filed with the Bankruptcy Court in May, 1982.

11.) The Plan provided that Miles would continue in basically the same form and at the same location as a wholly owned subsidiary of B & K.

12.) The Plan provided in Article VII that "all executory contracts shall be rejected."

13.) On July 13, 1982, plaintiffs filed objections to the Plan. The debtor in possession responded that it did not intend to reject the Agreement, but that it could provide no answer to the question whether B & K, the purchaser, intended to reject the agreement.

14.) The Bankruptcy Court confirmed the Plan on July 22, 1982, with an amendment changing the name of the stock purchaser from B & K Corporation to Valerian Kostrzewa and his two brothers who immediately thereafter acquired 100% of the outstanding stock of Miles. Simultaneously, the Agreement was rejected by the stock purchasers.

15.) All employees were terminated and the Miles plant was closed for the Friday and weekend following the Plan confirmation. Certain employees were then rehired,

upon application, at the discretion of Miles and were subject to terms and conditions of employment determined by Miles. These actions were taken in accordance with written notices dated July 16, 1982, from the attorney for Valerian Kostrzewa to plaintiffs and the employees covered by the Agreement.

16.) On July 28, 1982, the plaintiffs filed a grievance protesting numerous alleged violations of the Agreement in connection with the events and conduct by Miles noted in Finding of Fact # 15, *supra*. Miles responded on August 2, 1982 that it did not recognize the Agreement and maintained that the grievance was without standing.

17.) In October, 1981, three union committeemen were terminated for an alleged conflict of interest. These employees had filed articles of incorporation for a new corporation entitled Mid-Michigan Machinery, which they intended to operate in the event that Miles did not survive.

18.) In an arbitrator's award dated August 2, 1982, the three union committeemen were ordered reinstated with the condition that such reinstatement become effective when they demonstrated to Miles that they had divested their interest in Mid-Michigan.

19.) On August 27, 1982, Mid-Michigan was dissolved. Upon proof thereof and demand by plaintiffs, Miles refused to reinstate the three committeemen. On September 20, 1982, Miles responded that it did not recognize responsibility for the actions of its "predecessor," Miles Machinery Company.

20.) Miles listed 15 active shop employees as of mid-October, 1982. All were employees of Miles prior to the Plan confirmation, although two were non-bargaining employees. Of the remaining 13 employees, only four were among the top 13 in seniority rights under the Agreement.

21.) Assets of Miles at the time of the stock acquisition consisted of cash receivables, work in process, inventory, prepaid expenses, office and other equipment and a possible tax loss carryover from prior operating losses. A factor considered in the acquisition of the stock was the possible benefit of the tax loss carryover which might best be realized by a stock acquisition.

## CONCLUSIONS OF LAW

■ 1.) A collective bargaining agreement, such as the one in question, is an "executory contract" which may be assumed or rejected by the debtor in possession in a Chapter 11 bankruptcy proceeding, subject to the bankruptcy court's approval. *Shopmen's Local 455 v. Kevin Steel Prod. Inc.,* 519 F.2d 698, 701 (CA 2, 1975); *Carpenters Local 2746 v. Turney Wood Prod. Inc.,* 289 F.Supp. 143, 147 (W.D.Ark., 1968); Bankr. Act Section 313(1); 11 U.S.C. § 365(a).

■ 2.) A collective bargaining agreement can be rejected in Chapter 11 bankruptcy proceedings only by a formal court order. *In Re W.T. Grant Co.,* 474 F.Supp. 788 (S.D.N.Y., 1979), *aff'd,* 620 F.2d 319 (CA 2, 1980).

3.) The decisions of the Bankruptcy Court, referred to in Finding of Fact # 8, *supra,* are pertinent to the instant case because they directly address the policy arguments made by Miles in support of its contention that the Court should consider the economic realities of the situation and allow sufficient "breathing room" for the surviving corporation. Pursuant to the standards set forth in *Kevin Steel, supra; Brotherhood of Ry. Airline and Steamship Clerks v. REA Express Inc.,* 523 F.2d 164 (CA 2, 1975); and *In Re Bildisco,* 682 F.2d 72 (CA 3, 1982), the Bankruptcy Court determined that the Agreement was not so onerous and burdensome as to make successful reorganization unfeasible, nor did the equitable considerations favor rejection of the Agreement.

4.) The debtor in possession is a separate legal entity from the pre-bankruptcy corporation, with its own rights and duties and is subject to the supervision of the court. *Kevin Steel, supra,* at 704. Unlike the pre-bankruptcy corporate debtor, the debtor in possession may reject a collective bargaining agreement with the court's approval

pursuant to Bankruptcy Act 313(1), 11 U.S.C. Section 365(a). The pre-bankruptcy corporate debtor, who is a party to such an agreement, must comply with the more stringent termination provisions of Section 8(d) of the Labor Act, 29 U.S.C. 158(d). As explained in *Truck Drivers Local 807 v. Bohack Corp,* 541 F.2d 312, 320 (CA 2, 1976), the fact that there is a distinction between these entities does not imply that the agreement ceases to exist. Rather, for the narrow purpose of resolving the conflicting provisions of the labor and bankruptcy laws, the debtor in possession is simply not considered a party to the agreement subject to Section 8(d) and may reject the agreement under Section 313(1).

5.) Given the limitation of the distinction between corporate entities explained by the court in *Bohack,* the Court finds no basis for the defendant's argument that a distinction between the pre-bankruptcy Miles and Miles as it now exists can be made.

■ 6.) The Agreement between the parties herein was not rejected in the Chapter 11 bankruptcy proceedings which were completed, for purposes of this action, with the July 22, 1982 Plan confirmation. An unrejected executory contract survives confirmation of the Plan of Reorganization and becomes binding on the reorganized corporation. *Federal's Inc. v. Edmonton Investment Co.,* 404 F.Supp. 68, 71 (E.D.S.D.Mich., 1975), aff'd 555 F.2d 577 (CA 6, 1977); *In Re Alfar Dairy Inc.,* 458 F.2d 1258 (CA 5, 1972); *In Re Central Watch Inc.,* Bkrtcy., 22 B.R. 561, 564 and 565 (E.D.Wis., 1982).

■ 7.) The Court is not persuaded that Miles is a "successor employer" with the limited obligation of participating in good faith negotiations with the plaintiffs, pursuant to the Supreme Court's holding in *NLRB v. Burns Security Services Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). Successor employer situations arise when there is no substantial continuity of identity of the business enterprise transcending the change of ownership of business assets or interests. *Howard Johnson Co. Inc. v. Hotel Employees,* 417 U.S. 249, 263, 94 S.Ct. 2236, 2244, 41 L.Ed.2d 46 (1974). Nearly every case cited by Miles in support of its successor employer argument involved a sale or transfer of assets between unrelated parties. As noted in Findings of Fact # 9 through # 14, *supra,* the Kostrzewas obtained ownership in Miles by the purchase of 100% of the underlying stock. Thus, the legal corporate entity was identical before and after the transaction. Further, while Miles claims that there have been substantial changes in the workforce and operations of the business, the Court perceives these "changes" as cut-backs and shifts in emphasis of what previously existed, necessitated by the prevailing economic and market forces. The Federal Courts as well as the NLRB have consistently recognized that a change in stock ownership does not alter the contractual liabilities of an employer under an existing collective bargaining agreement or result in a successor employer situation. *Teamsters v. Portland Auto Delivery Co.,* 90 LRRM 2786 (D.Ore., 1975); *Local 228 v. Gayety Theatre,* 87 LRRM 3020 (N.D.Ohio, 1974); *NLRB v. Topinka's Country House Inc.,* 235 NLRB 72 (1978), aff'd 624 F.2d 770 (CA 6, 1980); *Western Boot and Shoe Inc.,* 205 NLRB 999 (1973); *NLRB v. Miller Trucking Service Inc.,* 445 F.2d 927 (CA 10, 1971). The exceptions to this general doctrine of law as applied in the cases relied upon by Miles, see *NLRB v. Edjo Inc.,* 631 F.2d 604 (CA 9, 1980); and *MPE Inc.,* 226 NLRB 79 (1976), are narrow and the Court finds them unpersuasive when applied in the present case.

9.) As indicated in Finding of Fact # 20, *supra,* one reason for the nature of the stock acquisition in the present case was the tax benefit that might be realized thereby. The Sixth Circuit has recently held that it would be improper to find that a corporation exists for tax purposes but does not exist for purposes of a labor agreement with the corporation's workers. Further, a company seeking the substantial benefits of a tax loss, must accept the obligations arising out of the arrangement. *Miami Foundry Corp. v. NLRB,* 11 LRRM 2367, 2368 (CA 6, No. 80–1731, decided July 17, 1982).

688

10.) Based upon the above Findings of Fact and Conclusions of Law the Court has determined that the Agreement exists between defendant, Miles, and plaintiffs and that it is binding upon both parties. Further, the Court has jurisdiction over the case under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Accordingly, Miles' motion to dismiss is DENIED and the Court will proceed to consider plaintiff's motion for preliminary injunction.

■ 11.) A federal district court may issue an injunction pursuant to its jurisdiction under 29 U.S.C. § 185 to preserve the status quo pending resolution of a contractual dispute by arbitration. *Boys Markets v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 1991 (1970). Although *Boys Markets* involved an injunction against union activities, its principle has also been applied where the employer is allegedly violating a labor agreement. *Local Lodge 1266 Machinists v. Panoramic,* 668 F.2d 276 (CA 7, 1981); *United Steelworkers v. Fort Pitt Steel Casting,* 598 F.2d 1273 (CA 3, 1979); *Lever Brothers Co. v. International Chemical Workers Union Local 217,* 554 F.2d 115 (CA 4, 1976).

12.) The plaintiffs filed their grievance pursuant to the Agreement as noted in Findings of Fact # 6 and # 16, *supra.* Therefore the underlying dispute may be the subject of mandatory arbitration justifying injunctive relief. *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 407–408, 96 S.Ct. 3141, 3147–3148, 49 L.Ed.2d 1022 (1976); *Fort Pitt Steel Casting, supra,* at 1278.

13.) Upon determining that the Agreement is binding and that the matters in dispute are arbitrable, the Court must then consider the following factors in determining whether a preliminary injunction should issue:

(1) Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiffs have shown irreparable injury;

(3) Whether the issuance of a preliminary injunction would not likely cause substantial harm to others; and

(4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Assoc. v. Knebel,* 563 F.2d 256 (CA 6, 1977); *UAW v. Mueller Brass Co.,* No. 80–74159 (E.D.Mich., decided November 21, 1980).

■ 14.) Based upon the above Findings of Fact and Conclusions of Law, the Court concludes that plaintiffs have shown a substantial likelihood of success on the merits.

15.) As noted in Findings of Fact # 15, # 19, and # 20, *supra,* employees covered by the Agreement have suffered loss of employment with no reasonable prospect of being rehired or recovering lost entitlements without injunctive intervention by the Court. Such a situation provides adequate grounds for a finding of irreparable injury. *Amalgamated Food Employees Union Local 590 v. National Tea Co.,* 346 F.Supp. 875, 882 (W.D.Pa., 1972); *Columbia Typographical Union No. 101 v. The Evening Star Newspaper Co.,* 100 LRRM 2394 (D.D.C., 1978); *Local Union No. 328 v. Armor & Co.,* 294 F.Supp. 168, 171 (W.D.Mich., 1968); *Gayety Theatre, supra; Portland Auto Delivery, supra.*

■ 16.) Miles asserts that issuance of the preliminary injunction will prevent them from making changes in their corporate structure, composition of labor force, task assignments, nature of supervision and other areas of management. The Court recognizes the policy of encouraging freedom of corporate management, however this policy does not justify unilateral rejection of a collective bargaining agreement in disregard of national labor laws and the underlying policy encouraging such arrangements. The equitable concerns of relative harms and public policy clearly favor plaintiffs in this case.

III. *Preliminary Injunction*

Accordingly, in view of the foregoing, IT IS HEREBY ORDERED AND AD-

JUDGED that a preliminary injunction issue against the defendant Miles Machinery Company preliminarily enjoining Miles as follows:

(1) To promptly comply with the grievance procedure prescribed in Article VII of the Agreement, including final and binding arbitration, if necessary, in resolving the grievance filed July 28, 1982 by plaintiffs as well as other matters as may be properly resolved under such procedure. Plaintiffs are likewise directed to cooperate fully with defendants in pursuing their grievances under the Agreement.

(2) To promptly notify plaintiffs of the specific material proofs that will be necessary to satisfy the arbitrator's order of reinstatement dated August 2, 1982. Such notice shall be in a single writing and shall specify only those matters of concern which are clearly pertinent to the conflict of interest charges. Upon presentation of such proofs, Miles is directed to comply with the terms of the arbitrator's award immediately.

(3) To meet with plaintiffs in an endeavor to reach a satisfactory and timely solution to the problems confronting the parties, provided however, if either party is of the opinion that the other is refusing to meet in good faith in such efforts, such party may apply to the Court for further directions with respect to this matter.

This preliminary injunction is to remain in effect until such time as the Grievance Procedure under the Agreement has been fully exhausted as to these matters and the arbitrator's award has been complied with, or until a final decree is entered in this case.

The plaintiffs shall post bond with surety approved by this Court in the amount of $50,000 contemporaneously with the issuance of this preliminary injunction order.