**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, and Local 600, International Ladies' Garment Workers' Union, Plaintiffs,**

v.

**The BALI COMPANY and Bali Foundations, Inc., Defendants.**

**Civ. No. 86–1778 HL.**

United States District Court, D. Puerto Rico.

Nov. 18, 1986.

Order Dec. 17, 1986.

---

**49.** *See supra* footnote 2.

Nicolás Delgado, Intern. Ladies' Garment Workers' Union, Delgado & Zemen, Santurce, P.R., Max Zimny, Joseph Good, Max Zimny Law Firm, New York City, for plaintiffs.

Vicente Antonetti, Goldman & Antonetti, Santurce, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

Plaintiffs, International Ladies' Garment Workers' Union and Local 600 of the International Ladies' Garment Workers' Union (jointly "plaintiff" or "Union"), have filed a verified complaint pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. sect. 185, and a petition for a temporary restraining order pursuant to Fed.R.Civ.P. 65(b) against defendants, The Bali Company and Bali Foundations, Inc. (jointly "defendant" or "Bali"). On November 17, 1986 a hearing was held, at which all parties were present, to address plaintiff's petition to enjoin defendant from closing its brassiere manufacturing plant in Río Piedras, Puerto Rico. After considering the pleadings, evidence and oral arguments of the parties, we grant plaintiff's petition and will issue a temporary restraining order enjoining Bali from halting operations, laying off employees and closing its garment manufacturing plant in Puerto Rico.

### FINDINGS OF FACT

The material facts in this case are undisputed.

For many years Bali has maintained a plant in Río Piedras, Puerto Rico for the manufacture of brassieres. The plant cuts and sews "Bali brand" bras, which is its top quality line, as well as bras sold at lower prices. The Puerto Rico plant presently employs approximately 300 workers who are members of the Union. Many of

these employees are highly skilled and long-time workers.

As a member of the Puerto Rico Corset and Brassiere Association ("Association"), Bali is bound by a collective bargaining agreement ("Agreement") with the Union for the period February 1, 1986 through January 31, 1989. The Agreement contains a broad arbitration clause which provides:

Adjustment of Disputes

1. Any and all complaints, disputes, controversies, claims and grievances between the Association or any of its members, and the Union or any of the workers, arising under, out of, or in connection with, or in any manner relating to this Agreement, or the violation thereof, or the acts, conduct or relations between the parties or their members, including, without limitation, any claim against a member of the Association arising out of any alleged dissolution or termination of its business prior to the expiration of the term hereof, ...

Other relevant provisions of the Agreement are the "Work Preservation Clause:"

A member of the Association shall have no work performed outside of its own shop unless the workers of its inside shop are fully supplied with work. Furthermore, any such outside shop must be under contract with an affiliate of the International Ladies' Garment Workers' Union.

and the "Reorganization Clause:"

A member of the Association shall have the right in good faith to discontinue, curtail and reorganize his factory. A reorganization in good faith shall mean a bona fide reorganization of the member's business, necessitated by a permanent curtailment of its business or a fundamental change in the character of its business. Any reduction in personnel as a result of a bona fide reorganization, shall be made on the basis of seniority with due regard to the worker's ability to perform the work.

In June, 1986 the Union and Bali entered into a Settlement Agreement permitting Bali to reduce its work force in the Puerto Rico plant from 400 to 300 bargaining unit members. The Union acceded to this work force reduction with the understanding that the remaining workers would be full-time rather than part-time, thus, increasing the efficiency and economic stability of the plant.

However, on July 29, 1986, Bali informed the union, by letter, of its intent to close the Puerto Rico plant and transfer operation to its non-union plant in Statesville, North Carolina. The Union and Bali met several times to discuss this issue. The Union suggested that Bali transfer its production and state-of-the art cutting equipment from the non-union plant in Statesville to Puerto Rico. Bali refused. On November 7, 1986, Bali informed the workers that it intends to completely close the Puerto Rico plant by the end of November, 1986.

Bali relies on the reorganization clause in the Agreement to support its decision to close the plant. Bali claims it must take this action for reasons of economic necessity and to preserve the import quotas required to maintain the plants it has in Mexico, Costa Rica, and the Dominican Republic.

The Union claims that the reorganization clause does not authorize a plant closing, and, even if it did, the reasons expressed by Bali are insufficient to justify closure. In addition, the union claims Bali's decision to transfer the Puerto Rico operation to a non-union plant violates the work preservation clause of the Agreement.

On November 10, 1986, the union delivered a request to the arbitrator for immediate arbitration of the dispute. Soon thereafter, on November 14, 1986, plaintiffs filed a petition in this court for a temporary restraining order enjoining the plant closing.

CONCLUSIONS OF LAW

Plaintiff's petition raises the issue of the federal district courts' authority to enjoin an employer's action in a labor dispute. In *Boys Markets, Inc. v. Retail Clerks Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d

199 (1970), and *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Supreme Court recognized a narrow exception to the Norris La Guardia Act, 29 U.S.C. sects. 101–115, which prohibits federal courts from issuing injunctions in labor cases. The Court held that an employer could secure an injunction against a striking union if the collective bargaining agreement between the parties contained a no-strike clause and the dispute underlying the strike is subject to the arbitration provisions of the contract.

■ Since *Buffalo Forge*, it is well established that federal district courts retain the authority to issue a "status quo" or "reverse *Boys Market* " injunction to restrain the actions of an employer in aid of arbitration. *See Local Lodge No. 1266, etc. v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981) (cases cited therein); *see also, Teradyne, Inc. v. Mostek Corp.*, 797 F.2d 43 (1st Cir.1986) (injunction awarded Federal Arbitration Act case). Injunctive relief is available in aid of arbitration where the underlying dispute is subject to mandatory arbitration under the labor contract and where it is necessary to prevent arbitration from being rendered meaningless. *Panoramic, supra*, 668 F.2d at 283. As in all *Boys Markets* situations the traditional requirements of equity must also be met before an injunction can issue: 1) likelihood of success on the merits; 2) irreparable harm; and 3) balance of hardship. *Id.; International Detective Service, Inc. v. International Brotherhood of Teamsters*, 614 F.2d 29, 31 (1st Cir.1980).

■ At the outset we must determine whether this labor dispute is arbitrable. Under a long line of decisions from the Supreme Court, a collective bargaining agreement which includes an arbitration clause presumes arbitrability.

An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960).

■ In this case the dispute is clearly arbitrable. The agreement contains a broad arbitration clause expressly empowering the Arbitrator to decide *"all* complaints, disputes, controversies, claims and grievances" including claims arising out of "dissolution or termination" of business, which is at issue here.

■ Whether petitioner has a likelihood of success on the merits is not a factor to be given great weight by the court when the case involves a labor dispute. To require a showing of probable success on the merits of a labor grievance would intrude significantly on the arbitrator's function and would constitute the sort of judicial preemption of the arbitration process condemned by the Supreme Court in *Buffalo Forge. See Panoramic, supra*, 668 F.2d at 284.[1] Petitioner needs only establish that the position he will espouse in arbitration is sufficiently sound to prevent arbitration from being a futile endeavor. *Transit Union Division 1384 v. Greyhound Lines, Inc.*, 529 F.2d 1073, 1077–78 (9th Cir.1976); *Lever Brothers Co. v. Chemical Workers Local*, 554 F.2d 115 (4th Cir.1976).

■ The union argues that Bali's decision to close the union plant in Puerto Rico

---

1. In support of their argument that the Union must make a strong showing of probable success on the merits, defendants rely on *Hoh v. Pepsico, Inc.*, 491 F.2d 556, 561 (2nd Cir.1974), where the court held that a union seeking a status quo injunction against employer's action must show "not simply some likelihood of success in compelling arbitration but in obtaining the award in aid of which the injunction is sought." We decline to follow *Hoh* because it has been considerably eroded by subsequent Second Circuit decisions. *See Wine, Liquor & Distillery Workers Local v. Hiram Walker-W.A. Taylor Distributors*, 88 LRRM 3117, 3131 (S.D.N.Y.), aff'd. 90 LRRM 2889 (2nd Cir.1975); *Jacobson & Co. v. Armstrong Cork Co.*, 548 F.2d 438, 443 (2nd Cir.1977).

and transfer operations to a non-union plant in Statesville, North Carolina, violates the Agreement's work preservation clause which prohibits work from being sent to an "outside shop" unless it is under contract with an affiliate of the ILGWU. We find this argument is sufficiently sound to raise a colorable claim to be decided at arbitration. Though the purpose and effect of the clause is unclear from its language, this is a question of contract interpretation which goes to the merits of plaintiff's claim and must be decided by the arbitrator rather than this court.

■ A showing of irreparable injury means not simply any injury resulting from a breach of the collective bargaining agreement, but rather "injury so irreparable that a decision of the [arbitrator] in the union's favor would be but an empty victory." *Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railroad,* 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379 (1960). An injunction in aid of arbitration is appropriate, therefore, only when the actual or threatened harm would amount to a frustration or vitiation of arbitration.

■ Bali has already notified the employees and the union of its plans to terminate operations and close the plant in Río Piedras. We find this action by the employer would cause plaintiff's irreparable injury and frustrate arbitration. Closure of the plant prior to arbitration would present the arbitrator with a *fact accompli,* leaving him without any real power to award an adequate remedy. Continued employment for the present employees would be the appropriate remedy in this case if the arbitrator finds in favor of the union. However, once the plant is dismantled it is unfeasible for the arbitrator to order reconstruction and reopening of operations.

Our conclusion about Bali's decision to close the Río Piedras plant finds support in cases of similar employer action where the courts have held that monetary damages was not an adequate remedy and that the union members would be irreparably harmed if an injunction not issue. *Panoramic, supra,* 668 F.2d 276 (sale of corporate assets); *Teamsters Local 71 v. Akers Motor Lines, Inc.,* 582 F.2d 1336 (4th Cir. 1978), cert. denied, 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 485 (1979) (partial liquidation of business); *Lever Brothers Co., supra,* 554 F.2d 115 (4th Cir.1976) (relocation of plant); *Bakery Drivers Local 802 v. S.B. Thomas, Inc.,* 99 L.R.R.M. 2253 (E.D. N.Y.1978) (subcontracting of union work); *Columbia Typo-Graphical Union No. 101 v. Evening Star Newspaper Co.,* 100 L.R. R.M. 2394 (D.D.C.1978) (termination of business); *Food Employees Local 590 v. National Tea Co.,* 346 F.Supp. 875 (W.D. Pa.), remanded without opinion, 474 F.2d 1338 (3d Cir.1972) (sale of business); *Technical, Office & Professional Workers Local 757 v. Budd Co.,* 345 F.Supp. 42 (E.D. Pa.1972) (relocation of corporate headquarters).

■ We also find that the balance of hardships weighs in favor of issuing a temporary restraining order. If the plant is closed the 300 Bali employees would be left without employment and, given the state of the Puerto Rico job market, may remain permanently unemployed.

Bali argues that if it is forced to keep the plant open it would operate at a loss and, more importantly, may lose import quotas for plants it has in other countries with a resulting loss of the market to competitors. That Bali will lose import quotas and a market for bras in a short period of time is, at this point, nothing more than a conclusory argument by the company. No concrete evidence has been presented to this issue. Furthermore, Bali admits it has another two weeks of work left at the Río Piedras plant. Pursuant to Rule 65(b) a temporary restraining order may.endure no more than ten days. A hearing for a preliminary injunction has been set in this case following that ten day period. Bali may come with evidence to support its claim to hardship at that time.

WHEREFORE, it is hereby

ORDERED, that defendants, Bali Company and Bali Foundations, Inc., their officers, agents, employees, successors and attorneys and all persons in active concert or participation with them are hereby restrained from closing, preparing to close, or take any steps whatever to close their plant in Puerto Rico, diverting its work elsewhere, from laying off any personnel, from abandoning its lease or disposing of or moving in any manner the work, machinery or equipment of the Puerto Rico plant or the building housing it, discharging management, supervisory or non-supervisory personnel, or taking other steps to effect its permanent closing; and it is further

ORDERED, that plaintiffs are to post a $50,000 bond as security for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined; and it is further

ORDERED, that the parties are to submit to arbitration forthwith; and it is further

ORDERED, that this order expires on November 28, 1986; and it is further

ORDERED, that a hearing will be held on this matter on December 4, 1986, at 2:00 P.M.

### ORDER

Plaintiffs, International Ladies' Garment Workers' Union and its affiliate, Local 600 ("the Union"), have brought this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. sect. 185 against defendants, The Bali Company and Bali Foundation, Inc. ("Bali"). The Union seeks a preliminary and permanent injunction to prevent Bali from closing its brassiere manufacturing plant in Río Piedras, Puerto Rico until arbitration is completed and an opinion and award is issued.

On November 18, 1986 this Court issued a temporary restraining order pursuant to Fed.R.Civ.P. 65(b) enjoining Bali from closing its plant in Puerto Rico and ordered expedited arbitration of the dispute. Due to the restraining order the Bali plant in Puerto Rico remains intact, but production has stopped and the plant is idle.

The temporary restraining order prohibiting the plant closing was to expire on November 28, 1986 and preliminary injunction hearing was set for December 4, 1986. By agreement of the parties the restraining order was extended to December 17, 1986, at which time the court was to hold a permanent injunction hearing. The hearing was held on that date and evidence was presented by both parties.

It is well established that the federal district court has the authority in a labor case to issue an injunction in aid of arbitration. *See Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Local Lodge No. 1266 etc. v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981) (cases cited therein). As in all claims for injunctive relief the movant has the burden of establishing: 1) likelihood of success on the merits; 2) irreparable harm; and 3) balance of hardships weighing in its favor. *International Detective Service, Inc. v. International Brotherhood of Teamsters*, 614 F.2d 29, 31 (1st Cir.1980).

In our Opinion and Order of November 18, 1986, we found authority to issue an injunction in aid of arbitration, provided the union met its burden, because the parties' dispute was clearly arbitrable under the collective bargaining agreement. Upon requesting a temporary restraining order, the Union presented convincing evidence and argument that its members would suffer irreparable harm and that the balance of hardship weighed in its favor. We granted the union's petition for a TRO and ordered expedited arbitration. Given the current status of arbitration and the new evidence presented at the injunction hearing we deny the request for a preliminary injunction.

As explained in our Opinion and Order concerning plaintiffs' TRO petition, whether the union has a likelihood of success on the merits of the case is not a factor to be given great weight in a case such as this

one involving a labor dispute. *See Panoramic, supra,* 668 F.2d at 284. The petitioner need only establish that its claim is sufficiently sound to prevent arbitration from being a futile endeavor. *Transit Union Division 1384 v. Greyhound Lines, Inc.,* 529 F.2d 1073, 1077–78 (9th Cir.1976).

The union claims that Bali is closing the Puerto Rico plant and is transferring operations to a non-union plant in Statesville, North Carolina, in violation of a "work preservation clause" in the collective bargaining agreement. Bali refuted this claim by presenting evidence at the preliminary injunction hearing that the Puerto Rico plant was being closed for business necessity and that no operations have been transferred to Statesville or any other Bali plant outside Puerto Rico. Bali also presented evidence that the clause in the agreement upon which the union bases its claim is actually a subcontracting clause and does not prohibit the company from closing operations. Despite the evidence rebutting the union's argument, we find the union continues to have a sound claim for arbitration and that it is the function of the arbitrator to decide the merits of the dispute.

Whether an injunction should issue in this case turns on the resolution of the elements of irreparable harm and balance of hardships. The union bases its claim of irreparable harm on the probability that its members would remain permanently unemployed if the plant were to close. Bali rebutted this argument with testimony from Alfredo Castillo, Bali Director of Manufacturing for the Caribbean Basin and Ted Williams, Bali Vice President, that forty three percent of the employees who were laid-off in May, 1986, with the Union's consent, had found jobs with other garment companies.

Furthermore, important to the determination of irreparable harm is the availability of other remedy. At the time the union filed for a temporary restraining order arbitration had not yet begun and Bali had showed signs of attempting to postpone proceedings. Arbitration is now underway and, in fact, the final hearing on the dispute is set for Thursday of this week, December 18, 1986. Pursuant to the collective bargaining agreement the union has an adequate remedy, including injunctive relief, through arbitration. Article XXII, para. 1 provides:

> In addition to granting such other relief as he may deem proper, the award of the Arbitrator may contain provisions directing or restraining acts and conduct of the parties.

Weighing the balance of hardships we find the union has failed to meet its burden. Hardship to the union is avoidable because the final arbitration hearing in this matter is set for Thursday, December 18. A request for necessary relief can be made by the union at that time. Since the plant has not yet been, and will not be, closed as of Thursday's hearing date the arbitrator will not be presented with a *fait accompli,* leaving him with no real power to award the union an adequate remedy, should he believe, based on the evidence, that the union will prevail on the merits of the dispute.

On the other hand, Bali Vice President Ted Williams testified that Bali is suffering financial losses because of the restraining order prohibiting the dismantling of the plant. He testified that Bali has no work to be done in the Puerto Rico plant. If an injunction pending the arbitration award were to issue the plant would continue to sit idle with even greater monetary loss to the company.

WHEREFORE, plaintiffs' request for a permanent injunction is DENIED; and it is further

ORDERED, that the temporary restraining order is extended through Friday, December 19, 1986, the day following the final arbitration hearing, and is to expire at the end of that day, at 5:00 o'clock P.M.; and it is further

ORDERED, that following the expiration of the temporary restraining order the Clerk is to dismiss the complaint in this case.

IT IS SO ORDERED.