Heriberto **CRUZ–CAPELLA**, Hector Justiniano Morales, Jose Lopez–Ortiz, Jose Domingo Marti, Crispin Perez–Gonzalez, Jose Medina–Alfalla, Meraldo Guzman–Lopez, Alfredo Lopez–Matias, Plaintiffs,

v.

**COCA–COLA BOTTLING CO. OF PUERTO RICO, INC.**, Union de Tronquistas de Puerto Rico, Local 901, Defendants.

Civ. No. 86–1356CC.

United States District Court, D. Puerto Rico.

Nov. 25, 1987.

---

Jesús Hernández–Sánchez, Santurce, P.R., for plaintiffs.

Carl Schuster (McConnell Valdes Kelley Sifre Griggs & Ruíz–Suria), San Juan, P.R., Pedro J. Varela, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This is an action instituted by eight plaintiffs against their employer under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Section 185, *et seq.* (the Act), and against their union for breach of its duty of fair representation. The employer, Coca–Cola Bottling Co. of Puerto Rico, Inc. (Coca–Cola) and the Unión de Tronquistas de Puerto Rico, Local 901 (the Union), have moved for summary judgment on the grounds that there was no breach of the collective bargaining agreement since plaintiffs were discharged as a result of a sale of Coca–Cola's assets. It is further alleged that the parties bargained in good faith regarding the effect of the sale and plaintiffs are barred by an agreement signed by the parties on June 12, 1986 which covered the terms and conditions of their termination. It is, therefore, contended that plaintiffs also failed to show that the Union incurred in a breach of its duty of fair representation.

The record reveals the following undisputed facts. In May 1986 Coca–Cola sold its sales assets to the food and Spirits Distributing Corporation. As a result of this sale, Coca–Cola dismissed its complete sales people, including plaintiffs, effective May 23, 1986. At the time of their dismissal plaintiffs were represented by the Union, which had subscribed a collective bargaining agreement with Coca–Cola that would have been in effect until October 10, 1986.

Coca–Cola notified the Union of the sale and both parties bargained regarding the effect of the sale upon all of the unit's employees, including plaintiffs. The sale and imminent lay-off were announced to the employees on May 23, 1986 in a meeting held with Coca–Cola representatives. On June 12, 1986, the parties reached a final agreement and entered into a Stipulation which included all the terms and conditions pertaining to the termination. As a result of the Stipulation and Agreement dated June 12, 1986, all plaintiffs received severance pay in the amount of one month of work, plus one week for each full year of service of the employee to the company. Additionally, they received a bonus equivalent to two per cent of their salary and other benefits relating to pension and medical plans. The Stipulation also provided for the rescission of the collective bargaining agreement in effect at the time and Coca–Cola was relieved from any claims of cause of action arising from the sale of assets and the lay-off of the employees of the sales units.

■ It has been held that while the effects of a Company's decision to sell part of its business is a subject for mandatory bargaining, the decision itself is not subject to negotiation as a term and condition of employment within the context of Section 8(d) of the National Labor Relations Act, 29 U.S.C. Section 158 (the Act). Plaintiffs failed to show that there was a breach of the collective bargaining agreement in effect at the time of the sale. Coca–Cola's sole obligation under law was met when it negotiated with the Union over the effects of the sale upon the unit employees. *First National Maintenance Corp. v. N.L.R.B.,*

452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). As supported in the documents and sworn statements submitted by defendants with their motion for summary judgment, the terms and conditions of the negotiation were included in the Agreement and Stipulation signed by both parties on June 12, 1986. This agreement specifically asserts that the parties bargained in good faith in relation to the sale and subsequent reduction in force.[1]

■ Plaintiffs assert that Coca–Cola breached the collective bargaining agreement by not providing prior notice to the Union six days before the personnel reduction in accordance with Article XVII of the collective bargaining agreement. Plaintiffs' argument is misplaced since according to Article XVII of the collective bargaining agreement, Coca–Cola was not under an obligation to notify the Union of the decision to sell its Sales Department assets. Under agreement, notice to the Union was only required in situations of a partial or temporary personnel reduction within a department.[2] Consequently, the six-day notice requirement would not apply in case of a complete shutdown of a department as a result of a sale of the business, like the present situation.

Although Coca–Cola was not required to provide the Union with six-day prior notice, the supporting affidavits and documents on record establish that Coca–Cola gave notice to the Union of the imminent sale of assets and subsequent discharge of employees in advance of the termination and sale. Most importantly, by means of the Agreement and Stipulation signed on June 12, 1986, which covered all the aspects of plaintiffs' termination rights, the provisions contained in the collective bargaining agreement in

1. Paragraph three (3) of the June 12, 1986 Agreement and Stipulation provides:

   The Union acknowledges that the Company has fulfilled its obligation to negotiate in good faith about each and every matter about which it may have been obligated to negotiate, including the fact that it has negotiated in good faith about each and every matter related to the impact of said sale of assets upon the employees of the sales, office and plant units.

2. Article XVII of the collective bargaining agreement reads in its pertinent part as follows:

*Notification of Reduction*
When in the Company's judgment it is necessary to effect *a reduction of personnel within a department,* it shall inform the Union in writing at least six (6) days before stating the reasons or causes for said reduction. The only exception to the requirement to send previous notice shall be those reductions caused by force majeure. Employees subject to such a personnel reduction shall cease in their employment on the same date the notice (sic) sent to the Union, as provided in the previous subsection, becomes effective.

effect at the moment were rescinded in their entirety.[3]

Coca–Cola was also relieved from any and all claims that might arise from the sale and termination.[4] All plaintiffs acknowledged the terms and conditions of the Stipulation Agreement by signing a copy of the same as well as by accepting the economic benefits provided therein. All plaintiffs received severance pay and other benefits at the time of their lay-off.[5]

Under Section 7 of the Act "employees shall have the right to self organization ... to bargain collectively through representatives of their own choosing...." 29 U.S.C. Section 157. Furthermore, Section 9 provides that:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees ... shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment....

29 U.S.C. Section 159.

As the record establishes, the Union was the exclusive bargaining representative of the unit employees at the time of the lay-off that took place on May 23, 1986. The Union exercised this authority when it bargained over the impact of the inevitable sale and reached an agreement covering all aspects of plaintiffs' termination rights. Under the Act, bargaining representatives are given not only wide responsibility toward the employees they represent, but authority to meet that responsibility. *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). As stated by the U.S. Supreme Court in *Ford*, at 337–338, 73 S.Ct. at 685–686: "Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented."

Review of any controversy arising from any such agreement is necessarily restricted, when negotiated in good faith by the parties. *See H.K. Porter Co. v. N.L.R.B.*, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970). If the exercise of that discretion were to become the subject of judicial re-

---

**3.** Paragraph 3 of the Stipulation and Agreement reads in the pertinent part:

> Effective on the date of the signature of this Stipulation and Agreement, the sales contracting unit is dissolved and disappears *and the collective bargaining agreement with that unit between the Union and the Company is rescinded and stops being in existence without having any more effect for any purpose whatsoever in regard to each and every one of its articles.* However, it is the parties' understanding that any grievance filed by the Union under the sales agreement before the date of the signature of this Stipulation and Agreement may be processed under the grievance procedure established in said agreement and with the application of the articles of the same, as long as, of course, the Union complies with all the requirements of the grievance procedure established in the collective bargaining agreement. (Emphasis ours.)

**4.** In accordance with the Stipulation and Agreement the Union waived any and all claims arising out of the sale and termination. Specifically, paragraph 4 of the same reads as follows:

> In consideration of the fact that the Company has entered into this Stipulation and Agree-

ment, the Union, by itself and as the exclusive representative for the members of the sales unit, *also acknowledges that it does not have, nor do the employees covered by this Stipulation and Agreement have any kind of claim whatsoever against the Company, its shareholders, officers, employees, agents and representatives at any forum whatsoever, due to the aforementioned sale of assets or due to any results, impact or effect of the same; but if there were to exist any cause of action, by means of this Stipulation and Agreement, it unconditionally waives the same, and releases the Company, its shareholders, officers, employees, agents and representatives from any possible claim whatsoever forever.* (Emphasis ours.)

**5.** Plaintiffs received severance pay in the following amounts:

| | |
|---|---|
| Heriberto Cruz-Capella | $4,613.50 |
| Alfredo López-Matías | 2,077.07 |
| José López-Ortiz | 7,381.54 |
| José A. Martí-González | 8,084.08 |
| José E. Medina-Alfalla | 626.91 |
| Crispín Pérez-González | 7,321.71 |
| Meraldo Guzmán | 7,083.81 |
| Héctor Justiniano-Morales | 7,635.14 |

view, the effectiveness of the bargaining process contemplated by Congress would be seriously undermined.[6] *Cf. Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

■ While plaintiffs asserted in general terms that the Union breached its duty of fair representation, they have failed to substantiate these general allegations. In contrast to this, the documents and sworn statements presented by defendants show that there was no breach of such duty. No breach of the duty of fair representation occurs unless a union's conduct is arbitrary, discriminatory or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967). The undisputed facts show that the Union bargained fairly on behalf of the employees it represented in view of the imminent work people reduction as a result of the sale of the business. Through negotiation with Coca–Cola, the Union obtained reasonable termination benefits for all plaintiffs, as evidenced by the Agreement and Stipulation signed on June 12, 1986 and the checks received by plaintiffs.

In view of the aforementioned, plaintiffs had no right to take a grievance through arbitration since Coca–Cola was only required to bargain over the effects of the sale. Coca–Cola complied with its duty as it was empowered to sell its assets without further obligation. It is well settled that the decision to sell or close part of a business is not a term and condition of employment under the Act and is not subject to negotiation.

■ Assuming plaintiffs did have a right to utilize the grievance procedure to contest their termination, they failed to do so in a timely manner. Under Article XIV, Section 10(a) of the collective bargaining agreement between the parties, they were to bring their grievance within a five-day period from the date that the facts leading to the complaint arose. In accordance with this provision they could have initiated their grievance directly or through the Union delegate. Therefore, plaintiffs would have needed to file their grievance within five days from the date of their termination and they did not. Additionally, the Stipulation signed by the Union on behalf of plaintiffs provides that only grievances filed by the Union before June 12, 1986 could be processed under the grievance procedure set forth in the rescinded collective bargaining agreement. It also provides that processing of grievances is conditioned to the Union's compliance with the established procedure in the collective bargaining agreement.[7] Consequently, it becomes patent that plaintiffs were not entitled to take a grievance for the May 23, 1986 lay-off through the grievance procedure established in the collective bargaining agreement that was rescinded on June 12, 1986. In the event they could have taken a grievance they were prevented by the time limitation provided in the Agreement.

Viewing the record in the light most favorable to plaintiffs, we find that Coca–Cola did not breach the collective bargaining agreement in effect at the date of the sale of its assets and subsequent lay-offs. Coca–Cola fully complied with its only obligation under law which was to bargain

---

6. "Innevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co., supra,* 345 U.S. at p. 338, 73 S.Ct. at p. 686. *See also Humphrey v. Moore,* 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964).

7. Paragraph 3 of the June 12, 1986 Stipulation and Agreement provides in part:

... However, it is the parties' understanding that any grievance filed by the Union under the sales agreement before the date of the signature of this Stipulation and Agreement may be processed under the grievance procedure established in said agreement and with the application of the articles of the same, as long as, of course, the Union complies with all the requirements of the grievance procedure established in the collective bargaining agreement.

over the effects of the sale. *First National Maintenance Corp.,* 452 U.S. 666, 101 S.Ct. 2573. Likewise, the Union did not breach its duty of fair representation when it bargained over the effects of such sale and obtained the most favorable terms and conditions on behalf of plaintiffs, in view of the inevitable sale and lay-off. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Accordingly, the complaint is hereby DISMISSED.

Judgment shall be entered accordingly.

SO ORDERED.