Ines TORRES–MATOS, et al.,
Plaintiffs, Appellants,

v.

ST. LAWRENCE GARMENT CO., INC.,
et al., Defendants, Appellees.

No. 89–1751.

United States Court of Appeals,
First Circuit.

Heard Feb. 8, 1990.

Decided April 25, 1990.

Jesús Hernández–Sánchez, with whom Hernández–Sánchez Law Firm was on brief, for plaintiffs, appellants.

Manuel A. Núñez, with whom Curbelo & Núñez, Hato Rey, P.R., and Ira Jay Katz were on brief, for defendants, appellees.

Before BREYER, TORRUELLA and ALDRICH, Circuit Judges.

TORRUELLA, Circuit Judge.

Inés Torres Matos and 281 of her fellow employees appeal from a grant of summary judgment, a dismissal of their complaint and a denial of a request to amend. The original action was brought in the United States District Court for the District of Puerto Rico. We agree with the district court's decision and affirm the judgment in favor of St. Lawrence Garment Co., Inc. and the International Ladies' Garment Workers' Union, Local 601 (Union).

## I. FACTS

On April 30, 1985, St. Lawrence and Pantymatic, Inc.,[1] executed a collective bargaining agreement (CBA) with the Union for a period of three years to end April 30, 1988, covering appellants, all of whom were employees of St. Lawrence. Article XVI, section three of the CBA stated that St. Lawrence "shall have the right to discontinue, reduce and reorganize its factory."

1. Pantymatic and St. Lawrence merged in 1986.

On December 10, 1987, St. Lawrence notified the Union that it intended to permanently close operations on December 31, 1987. St. Lawrence maintained that the closing was unrelated to labor costs, but instead was due to the retirement of Isaac Zacharias, the owner of 96% of the company's stock. This fact was undisputed. All employees of St. Lawrence, including appellants, were notified of their termination on December 15, 1987. Thereafter, St. Lawrence and the Union engaged in several meetings concerning the effects of the closing. During these meetings St. Lawrence refused the Union's demand for severance pay because it contended that, under the CBA, it had no obligation to provide severance pay.

On March 3, 1988, the Union filed an unfair labor practice charge with the National Labor Relations Board (Board) against St. Lawrence alleging violations of the National Labor Relations Act. These charges were found to be without merit and were dismissed by the Board on April 28, 1988.

On October 21, 1988, the Union filed an unfair labor practice charge against Stanley Baron, d/b/a Phoenix Associates, claiming that Baron illegally denied that he was the successor to St. Lawrence Inc. This charge was dismissed at the regional level on December 29, 1988. On January 23, 1989, the Union appealed this dismissal to the Board. Leave to appeal was denied on May 17, 1989.

In their original complaint, appellants alleged that the discontinuance of operations prior to the expiration of the CBA, as well as their discharge, was illegal, and that they were consequently entitled to damages. Appellants also alleged that, after the closing of operations, the same owners of St. Lawrence were taking steps to reopen operations in the same facilities under a different corporate name. Thus, the "closing" was a mere pretext to oust the Union. Lastly, appellants moved to amend their complaint to add additional claims and parties.

Appellants also claim that the Union failed to take any legal or administrative action to prevent St. Lawrence from permanently closing its operations before the expiration of the CBA. They argue that, by doing so, the Union breached its duty of fair representation.

## II. DISCUSSION

### A. *Original Complaint*

After reviewing the record, we find that St. Lawrence was legally entitled to discontinue operations prior to the expiration of the CBA. Nothing in that agreement prohibited St. Lawrence from doing so. *See N.L.R.B. v. New England WEB, Inc.*, 309 F.2d 696 (1st Cir.1962). "[A] company may suspend its operations so long as its change in operations is not motivated by the illegal intention to avoid its obligations under the NLRA.... An ordinary act of business management cannot be set aside by the NLRB." *Id.* at 700. Furthermore, an employer's right to close its entire business, even for discriminatory reasons, ends the employer-employee relationship. *Textile Workers v. Darlington Co.*, 380 U.S. 263, 274, 85 S.Ct. 994, 1001, 13 L.Ed.2d 827 (1965). "A collective bargaining agreement ... does not create an employer-employee relationship nor does it guarantee the continuance of one. Employee's rights under such contract do not survive a discontinuance of business and termination of operations." *Fraser v. Magic Chef–Food Giant Markets, Inc.*, 324 F.2d 853, 856 (6th Cir.1963).

The undisputed reason given for St. Lawrence's closing operations was that Mr. Isaac Zacharias, owner of 96% of the company stock, had decided to retire. At no time did the appellants present any evidence whatsoever indicating that the permanent closing of operations of St. Lawrence was undertaken in bad faith or to violate the provisions of the NLRA. "[A]n employer has an absolute right to terminate his entire business for any reason he pleases." *Textile Workers v. Darlington Co.*, 380 U.S. at 268, 85 S.Ct. at 998. This is simply not a case of an employer closing his business temporarily and then reopening in order to oust the Union. *N.L.R.B. v. Southern Plasma Corp.*, 626 F.2d 1287, 1292 (5th Cir.1980). Furthermore, assuming that what was alleged is that the employer committed an unfair labor practice, *i.e.*, action by the employer for the purpose of ousting the Union, the remedy for such allegations is the filing of unfair labor practice charges before the Board, not a suit in court. 29 U.S.C. § 160(a); *N.L.R.B. v. South Central Bell Telephone Co.*, 688 F.2d 345 (1982). Those charges were filed and dismissed by the Board. We have no jurisdiction to review such a dismissal, particularly at this procedural juncture. *United Food and Commercial Workers Union v. N.L.R.B.*, 840 F.2d 171 (3d Cir.1988).

### B. *Proposed Amendments to the Complaint*

The proposed amended complaint sought to add the following claims: that the permanent closing constituted a "lockout" in violation of Article XXI of the CBA; that Stanley Baron d/b/a Industrias Puertorriqueñas, the owner of the other 4% of St. Lawrence stock, should be liable as a successor employer when he opened a new operation; that the Union and St. Lawrence engaged in a conspiracy; and that Pantymatic should be added as a defendant. Grant or denial of a motion to amend is within the sound discretion of the district court. *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir.1984).

Given the pendency of the summary judgment motion, appellants were required to show that these proposed amendments had substantial merit, *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1063 (7th Cir.1979), and were supported by substantial and convincing evidence. *See, e.g., Carey v. Beans*, 500 F.Supp. 580 (E.D.Pa. 1980); *Artam v. International Harvester, Inc.*, 355 F.Supp. 476, 481 (W.D.Pa.1972). Utilizing an abuse of discretion standard, *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 896 (1st Cir.1979), we find that the district court correctly denied these amendments. No evidence was presented to support a lockout claim and as to the successorship charge, as already stated, the Un-

ion had filed charges based on this claim and the Board dismissed it.[2] Furthermore, the 4% owner was not obliged to adopt the CBA in issue, *see N.L.R.B. v. Burns International Detective Agency, Inc.*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). The CBA had expired on April 30, 1988, while appellants' own allegations in the complaint appear to state that Stanley Baron d/b/a Industrias Puertorriqueñas commenced operations on or about June, 1988. There was, thus, no CBA for Stanley Baron to adopt when he started working.

Furthermore, as the district court found, the successorship standard requires a detailed analysis of an alleged business transfer. The factors in determining successorship are: (1) whether there is substantial continuity between the enterprises; (2) whether the majority of the new employees were employees of the predecessor; and (3) whether the Union has demanded bargaining with the successor. *Fall River Dyeing & Finishing Corp. v. N.L.R.B.*, 482 U.S. 27, 42–54, 107 S.Ct. 2225, 2235–41, 96 L.Ed.2d 22 (1987). Such a new cause of action against a new defendant should be filed as another complaint. The only evidence that St. Lawrence's sale to Baron was a sham is the alleged statement by the St. Lawrence's Personnel Director Josefa Rivera to appellant Regina Martinez that "there is fraud and contract breach involved." All evidence other than the Martinez affidavits demonstrates a bona fide sale of assets to Baron. Proof of the bad faith or identity of ownership aspects of appellant's successorship theory is totally dependent on the alleged Rivera statement, which is of no probative value because of its conclusory nature. *Cf. Mas Marques v. Digital Equipment Corp.*, 637 F.2d 24, 17

(1st Cir.1980) (conclusory statements that relationship between ostensibly separate entities is a "sham," that entities are "one and the same," that one entity "impermissibly controlled" the other, insufficient to withstand summary judgment motion).

As to the conspiracy claim, appellants allege that the Union and St. Lawrence planned to convey to the employees the idea that St. Lawrence would reopen normal operations. They aver that the goal of these plans was to soften the employees' requests to the Union and St. Lawrence concerning the effects of the closing. These conclusory allegations of conspiracy were based on sworn statements made by two of the appellants and were timely opposed by St. Lawrence. Both statements are based on hearsay and as such cannot serve to create material issues of fact as to the alleged acts of conspiracy. Fed.R. Civ.P. 56(e)[3]. The Union asserts that it corroborated beyond any doubt that the closing of Pantymatic and St. Lawrence was not motivated by economic reasons but by the decision of the owner of the majority of stock of both corporations to retire.

Lastly, the addition of Pantymatic is wholly superfluous. St. Lawrence and Pantymatic merged in 1986.[4] St. Lawrence and Pantymatic were jointly owned. Pantymatic was a co-signatory on the CBA and both permanently ceased to operate before the expiration of the CBA. Including Pantymatic would not vary the outcome of this case.

## C. *The Union*

■ Appellants claim that the Union breached its duty to represent them fairly. This, in light of the language in the CBA,

---

**2.** It seems as though Stanley Baron was doing business as Phoenix Associates, Inc., Industrias Puertorriqueñas, and that the NLRB charge brought against Phoenix Associates in October 21, 1988 covered this business. Appellants now wish to bring the claim against Baron again, this time calling his business Industrias Puertorriqueñas only. The NLRB record is not before this court and furthermore we have no jurisdiction over Board dismissals. *See United Foods and Commercial Workers v. N.L.R.B.*, 840 F.2d 171 (3d Cir.1988).

**3.** Rule 56(e) provides that affidavits used to support or oppose a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738 at 467 (1983 & Supp.1989).

**4.** Pantymatic existed only as a trade name after the merger.

and the actions taken by the Union, is simply contrary to the undisputed facts. The Union had no legal recourse available to prevent the permanent closing by St. Lawrence. St. Lawrence's decision to permanently close was not amenable to negotiation with the Union prior to its implementation, because it was not based on labor costs as admitted by the appellants. *First National Maintenance Corp. v. N.L.R.B.,* 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). The Union undertook the only action available under the circumstances and engaged in negotiations with St. Lawrence with respect to the effects of the closing. The contract did not obligate St. Lawrence to pay severance. Nevertheless, the Union bargained in an attempt to obtain severance pay. Moreover, the Union also filed unfair labor practices charges against the 4% owner of St. Lawrence, claiming that St. Lawrence was really operating as a successor company and thus was violating the NLRA by failing to recognize the CBA. These charges were dismissed by the NLRB.

■ A union breaches its duty of fair representation "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1976). *Figueroa de Arroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d 281, 284 (1st Cir.1970). After review, evidence points to the conclusion that the Union complied with its statutory duty to bargain over the effects of the closing. *First National Maintenance v. N.L.R.B.,* 452 U.S. 666, 101 S.Ct. 2573, 69 L.Ed.2d 318 (1981). Firstly, the appellants' allegation that the Union breached its statutory duty to fully represent them stemmed from the incorrect legal assumption that St. Lawrence could have been legally prevented from discontinuing its operations prior to the expiration of the CBA. Secondly, the argument that the Union breached its duty of fair representation by not taking the necessary legal steps to prevent the closing is far from accurate. The Union, as indicated by the bringing of the unfair labor practices claim not only against St. Lawrence, but Baron as well, exhibited supererogatory pursuit of the appellants' concerns. We fail to see what more could have been done by the Union on behalf of its membership.

## III. CONCLUSION

When there is no issue as to any material fact, a summary judgment motion will be granted if the moving party is entitled to judgment as a matter of law. *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After reviewing the record below, we agree with the district court's decision. The good faith closing argument comes down to a pure question of the application of unambiguous contract language. *See, e.g., Edmonds v. United States,* 642 F.2d 877, 881 (1st Cir.1981). The denial of the amendments was not an abuse of discretion. Lastly, the CBA gave the Union no legal recourse against St. Lawrence.

*Affirmed.*