**CONGRESO de UNIONES INDUSTRIALES de PUERTO RICO, Plaintiff,**

v.

**V.C.S. NATIONAL PACKING COMPANY, INC., Defendant.**

**Civ. No. 90–1894CCC.**

United States District Court, D. Puerto Rico.

Feb. 5, 1991.

Nicolás Delgado–Figueroa, Puerto Nuevo, P.R., for plaintiff.

Jorge L. Capó–Matos, O'Neill & Borges, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

The matter is presently before the Court on the parties' cross motions for summary judgment. Having carefully reviewed the record, we agree that there is no genuine issue of material fact which would require a trial or further proceedings. For the reasons that follow, we GRANT defendant's motion for summary judgment and DISMISS the complaint.

On June 22, 1990, plaintiff Congreso de Uniones Industriales de Puerto Rico (hereinafter the Union) filed the present action in the Puerto Rico Superior Court, Ponce Part, pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). In essence, the complaint alleges that a permanent plant closing announced by defendant V.C.S. National Packing Company, Inc. (hereinafter the Company), infringed the collective bargaining agreement (CBA) between the parties. The complaint states that the Company refused to arbitrate the legality of the closing, as allegedly required by the CBA. The complaint sought a temporary restraining order (TRO) and a preliminary and permanent injunction against the closing, plus damages, costs and attorney's fees. The Union did not request an order compelling the Company to submit the closing to arbitration.

On June 26, 1990, the Puerto Rico Superior Court refused to issue the temporary

restraining order. The closing occurred as announced on June 29, 1990. On that date the Company removed the case to federal court, and subsequently, on July 13, 1990, moved for summary judgment under Fed. R.Civ.P. 56(c). Among other things, the Company states that there is no colorable dispute under the collective bargaining agreement, because none of its provisions prevents or prohibits the closing. On August 31, 1990, the Union cross moved for summary judgment. According to the Union, the closing infringes Article XXV of the CBA.

## FINDINGS OF FACT

The following material facts are not in controversy.[1]

1. The Company operated a seafood cannery in Ponce, Puerto Rico, until June 29, 1990.

2. The Union is the duly certified collective bargaining representative of the Company's employees. The Company and the Union are parties to a CBA. The agreement has been in effect since February 2, 1987, and expires on November 2, 1990.

3. Article XXIV of the CBA provides that for purposes of arbitration or legal matters before the Commonwealth of Puerto Rico, the official version of the agreement will be that in Spanish. Article XXIV provides further that when the dispute is to be litigated before the federal court or the National Labor Relations Board, the official version of the agreement shall be one in English.

4. Article XXV of the CBA proscribes strikes by the Union and lockouts by the Company during the term of the agreement. The CBA does not contain any clause concerning subcontracting, work relocation, plant closing, or severance payments as a result of plant closings or mass layoffs.

5. Article VII details the grievance and arbitration procedure under the contract. Article VII, Section 2 provides that any

1. Each party submitted a statement of uncontested material facts (Statement), as required by

controversy about the meaning and application of the CBA or over the suspension or termination of one or more employees covered by the CBA shall be resolved in final form according to this procedure. The first step requires a meeting between the Union and Company representatives *no later than five (5) working days* from the day that the dispute occurs. If the dispute is not solved in the first step, the contract requires a meeting between the Company Administrator or his representative, and the President of the Union, to settle the dispute. The meeting must be held no later than ten (10) days following the dispute. Finally, if the dispute is not settled satisfactorily, either party may request arbitration. The arbitration application must be submitted no later than five (5) working days after completion of the second step. Section (2)(G) of Article VII specifically provides:

> The parties are bound to fulfill the obligations within every term agreed in this procedure in order to have the right to continue discussing the dispute.

6. On April 26, 1990, the Company notified the Union of the permanent closing. Approximately *one month later*, on May 29, 1990, the Union objected to the announced closing on grounds that the closing infringed Article XXV of the CBA. On June 8, 1990, the Company replied, among other things, that the closing did not violate the CBA nor was the decision subject to the CBA. Further, since the Union had been notified of the closing on April 26, 1990, the matter was neither substantive nor procedurally arbitrable.

7. On June 15, 1990, the Union filed written grievances objecting to the closing. On June 18, 1990, the Company responded to the grievances, repeating that the decision to permanently close the plant was neither substantively nor procedurally arbitrable, nor subject to the grievance procedure of the contract. The Company stated, however, its disposition to discuss with the Union the effects of its decision.

Local Rule 311.12.

8. When the closing was announced, the parties were not negotiating a new CBA, nor was the Union on strike for any reason.

9. Following the closing announcement, the Company and the Union held various meetings to discuss the effects of the closing on the employees. The subjects discussed include, *inter alia:* the severance-incentive payments to be made, which employees would be entitled to same, pension plan distribution, life insurance, resolution of pending arbitration matters. On a voluntary basis, the Company voluntarily provided a severance package to employees according to their service years, and liquidated accrued-but-unused vacations and sick leave, and the Christmas bonus.

Summary judgment should be entered where the pleadings, depositions, answers to interrogatories, or admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

The Union seeks to enjoin a consummated plant closing. The Norris–LaGuardia Act sets forth the general federal policy, which prohibits federal courts from issuing injunctions in cases involving or arising out of a labor dispute. 29 U.S.C. § 104. A narrow exception has been recognized where injunctive relief is sought in aid of arbitration. *Independent Oil & Chem. Wkrs. v. Procter & Gamble*, 864 F.2d 927, 929 (1st Cir.1988).

■ We note that the Union did not request in its complaint an order compelling the Company to submit the closing to arbitration. Nor was any such order sought in the papers submitted before the Puerto Rico Superior Court, or in the Union's motion for summary judgment. To this date,

the Union has not requested leave to amend to incorporate a prayer or affirmative request for an arbitration order. Arbitration is a contract right which a party may waive expressly or by conduct throughout litigation. *See e.g. Jones Motor Co. v. Chauffeurs, Teamsters, etc.*, 671 F.2d 38, 42 (1st Cir.1982). If we were to infer waiver, the finding would prove fatal to the Union's request to enjoin the closing. *See Chicago Typographical U. v. Chicago Newspaper*, 620 F.2d 602, 604 (7th Cir. 1986) (denying injunction in part because union did not file to compel arbitration, but to enjoin employer action). Although the Union states at page five (5) of its summary judgment memorandum that "[a]n acceptable order of the Court could be an order to arbitrate," the sentence may be insufficient under the present circumstances to prevent a waiver finding. However, we will assume, without deciding, that the quoted language is tantamount to a timely request for an arbitration order.

■ To issue the injunction to aid a requested arbitration proceeding, the court must first determine whether the dispute is arbitrable. *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 247–249, 90 S.Ct. 1583, 1590–91, 26 L.Ed.2d 199 (1976); *Local Union No. 251 v. Almac's Inc.*, 894 F.2d 464, 465 (1st Cir.1990); *Independent Oil & Chem. Wkrs. v. Procter & Gamble, supra*, at 930. The party seeking injunctive relief must satisfy the corresponding equitable criteria of irreparable harm and imbalanced hardships. *Id.* The petitioner must establish that the position he will espouse in arbitration is sufficiently sound or colorable to prevent arbitration from being a futile endeavor. *Intern. Ladies' Garment Workers' Union v. Bali*, 649 F.Supp. 1083, 1086 (D.P.R.1986), *appeal dismissed*, 815 F.2d 691 (1st Cir.1987).[2]

---

2. In general, the elements that must be considered in connection with a request for a preliminary injunction include: (1) likelihood of success on the merits; (2) potentiality for irreparable injury; (3) a balancing of the relevant equities; and (4) the effect on the public interest. *Planned Parenthood League of Massachusetts v. Belloti*, 641 F.2d 1006, 1009 (1st Cir. 1981). See also, Morris, *The Developing Labor Law*, pp. 886–907 (1983) and 1982–1988 Supplement, pp. 456–459. When injunction is sought

in aid of arbitration, arbitrability replaces the fourth factor entirely, and tends to preempt the first. *Independent Oil & Chem. Wkrs. v. Procter & Gamble, supra*, at 930 n. 3. Where a permanent injunctive relief is involved, the test remains the same, with one exception: movants normally must show actual success on the merits rather than a mere likelihood of success. *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989). To require an actual

■ Arbitrability is a matter for judicial determination. *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 570–571, 80 S.Ct. 1343, 1364, 4 L.Ed.2d 1403 (1960). In determining arbitrability, we first look to the terms of the CBA. Where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." *Id.*

■ Recognizing that contractual provisions may exclude certain disputes from the scope of an otherwise broad arbitration clause. *Woodcrest Nursing Home v. Local 144, Hotel Hosp.*, 788 F.2d 894, 898 (2d Cir.1986), we find that the underlying dispute is not arbitrable.

First, the complaint does not raise a colorable dispute under the CBA. Second, the parties set specific time limits to process grievances, and to request arbitration under the CBA. Third, the CBA specifically provides (Article VII(2)(G)), that the parties have *no right* to discuss the grievance under the grievance-arbitration clause, unless every time requirement is met. Accordingly, while the CBA contains a broadly worded arbitration clause, the clause is expressly subject to an exclusionary provision which contractually forecloses arbitration under the present circumstances.

In this complaint, the Union challenged the closing as a violation of Article XXV.

In pertinent part, Article XXV prohibits lockouts while the collective bargaining agreement is in effect. In its cross motion for summary judgment, however, the Union has admitted there is no lockout.

In a lockout, or "employer strike," the company temporarily refuses, for tactical bargaining reasons, to furnish available work to employees in order to resist their demands or to obtain concessions from them. *Confederación Laborista v. Cervecería India*, 607 F.Supp. 1077, 1080 (D.P.R.) *aff'd.* 778 F.2d 65 (1st Cir.1985). The lockout is a well-recognized bargaining weapon. The lockout is the employer's side of the economic pressure when the parties are unable to resolve their problems in negotiations or agree on the terms or conditions of employment. While the strike is typically considered the union's last resort, the lockout is the employer's. *See Roberts' Dictionary of Industrial Relations*, p. 228 (1966); Morris, *supra*, at p. 1034.

It is undisputed that the challenged closing did not occur as a result of bargaining or negotiations. The parties were not bargaining over an agreement when the Company announced the closing. *Confederación Laborista v. Cervecería India*, 778 F.2d 65, 66 n. 3 (1st Cir.1985) (noting that no lockout exists where termination is not motivated by desire to "wring" concessions from the Union). The closing is not temporary, but permanent. All production has ceased; as has been admitted by the Union, no lockout exists. Accordingly, no dispute can be said to exist under Article XXV.

We also find that the CBA does not contain any provisions on subcontracting, plant closings, or work relocations. That is, no clause prohibits the employer's action.[3] Since there is no colorable claim

---

showing of success on the merits of a labor grievance, however, would impermissibly intrude upon the integrity of the arbitral process, should one follow. Therefore, concerning this criterion of the test, petitioner need only present a sufficiently colorable claim. *Intern. Ladies' Garment Workers' Union v. Bali, supra.*

**3.** We note that under the National Labor Relations Act, as amended, 29 U.S.C. § 158, *et seq.*, the employer generally is not required to bargain over its closing decision with the union.

Rather, the employer must bargain over the effects of the closing. *First National Maintenance Corp. v. N.L.R.B.*, 452 U.S. 666, 686, 101 S.Ct. 2573, 2584, 69 L.Ed.2d 318 (1981); *Torres-Matos v. St. Lawrence Garment Co.*, 901 F.2d 1144, 1148 (1st Cir.1990); *Cruz-Capella v. Coca-Cola Bottling Co.*, 677 F.Supp. 65, 67 (D.P.R. 1987). The Union does not allege that the Company refused to bargain in good faith over the effects of the closing. In fact, the record shows the contrary.

raised under the CBA, we conclude the Union is not legally entitled to the remedies sought.[4] *See e.g. Local 807 v. Brinks, Inc.*, 744 F.2d 283, 286 (2d Cir.1984) (dismissing complaint because no provision in collective bargaining agreement covered union's claim). *See also International Association of Machinists and Aerospace Workers Local 2725 v. General Electric Co.*, 90 D.C.O. 39 (D.P.R. Feb. 28, 1990), p. 122.

In conclusion, the Court finding that there are no genuine issues of material fact, defendant is entitled to judgment as a matter of law. The complaint is accordingly DISMISSED.

SO ORDERED.

---

**4.** We additionally note that even if we had any doubts concerning arbitrability of the underlying dispute, dismissal of the complaint would be appropriate. The parties expressly foreclosed arbitrability by agreeing they would have the right to discuss grievances only if they complied with the time requirement of the grievance arbitration clause Article. The Union was informed of the closing on April 26, 1990, and objected to the same one month later, on May 29, 1990, following lapse of the period specified to process grievances under the Article VII(2)(G) of the CBA. The Union unequivocally excluded from arbitration this dispute by not complying with the time prerequisites embodied therein. Accordingly, the dispute would not be arbitrable for this reason alone. *Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871, 873–875 (6th Cir.1988); *Steelworkers v. Cherokee Electric*, 127 LRRM 2375, 2378, 1987 WL 17056 (N.D.Ala.), *aff'd.* 829 F.2d 1131 (11th Cir.1987), *Reh'g. en banc denied*, 833 F.2d 1021, *cert. denied* 485 U.S. 1038, 108 S.Ct. 1601, 99 L.Ed.2d 915 (1988).